**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**DENVER DIVISION**

| | |
|---|---|
| **JANET SHAULIS,** and **JEWEL ARLENE KEY**, individually and on behalf of all other similarly situated individuals, <br><br> Plaintiff, <br><br> v. <br><br> **FALCON SUBSIDIARY LLC d/b/a AXISPOINT HEALTH,** a Delaware limited liability company, <br><br> Defendant. | Case No.: <br><br> **COLLECTIVE AND CLASS ACTION COMPLAINT** <br><br> **JURY DEMAND** |

Plaintiffs, Janet Shaulis and Jewel Arlene Key ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective and Class Action Complaint against Defendant, Falcon Subsidiary LLC d/b/a AxisPoint Health ("Defendant"), and state as follows:

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA," or 29 U.S.C. § 201 *et seq.*); California Labor Code 221, 223, 226, 226.7, 510, 512, 1174, 1194, 1197, 1197.1, 1198; California Industrial Welfare Commission Wage Order No. 4; California Business & Professions Code § 17200; and California Labor Code § 2698 *et seq.*

2.      Defendant offers call center services to patients of Defendant's clients and employs registered nurses in the positions of "Telehealth Nurse" and "Nurse Advice Line Nurse" (hereinafter jointly referred to as "THN") to receive and respond to patient phone calls, among other duties. The THNs work remotely from their home residences in states across the country.

3.    The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's THNs, are homogenous; in July 2008, it issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry. *See* ***Exhibit A***, U.S. Dept. of Labor, Fact Sheet #64.

4.    One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

5.    More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id*.    Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

6.    Defendant requires its THNs to work a full-time schedule, plus overtime. However, Defendant does not compensate the THNs for all work performed. Specifically, Defendant fails to pay THNs for certain work performed "off-the-clock" at the beginning of each shift, during meal periods, and at the end of each shift.  Defendant's illegal compensation practices and policies result in THNs not being paid for all time worked, including overtime.

7.    Defendant requires THNs to use multiple computer programs, software programs, and applications in the course of performing their responsibilities. These programs and applications are an integral, indispensable, and important part of the THNs' work as they cannot perform their jobs effectively without them.

8.    Regardless of medical specialty, Defendant's THNs perform the same basic job duties and are required to use the same or similar computer programs, software programs, applications, and phone systems.

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

9.      Pursuant to Defendant's illegal compensation practices and policies, Telemedicine Specialists and Advice Nurses are required to: 1) start-up and log-into computers, programs and applications, before each shift and *prior* to clocking into Defendant's timekeeping system; 2) perform computer, program and application log-in tasks off-the-clock during their uncompensated meal periods; and 3) shut-down and log-out of computers, programs and applications, subsequent to each shift and *after* clocking out of Defendant's timekeeping system.

10.     Defendant knew or could have easily determined how long it takes for THNs to complete the above described off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Class for this work, but did not.

11.     The individuals Plaintiffs seek to represent in this action are current and former THNs, who are similarly situated to herself in terms of having been subjected to Defendant's violations of federal and state law.

12.     Plaintiff seeks a declaration that their rights, and the rights of the putative Class, were violated, an award of unpaid wages (including overtime), an award of liquidated damages, injunctive and declaratory relief, attendant penalties, and award of attorneys' fees and costs to make themselves and the putative Class whole for the damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

13.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq.*

14.     Additionally, this Court has jurisdiction over Plaintiffs' FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

15.     Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's employees, including the Plaintiffs in this case, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis.

16.     This Court has original jurisdiction over Plaintiffs' state law class claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which at least some members of the proposed classes have a different citizenship from Defendant.

17.     The court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367 because the state law claims and the federal claim are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

18.     The court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

19.     The court has personal jurisdiction over Defendant because Defendant is domiciled in the state of Colorado, conducts business within the state of Colorado, employs individuals within the state of Colorado, and is registered with the Colorado Department of the Secretary of State.

**VENUE**

20.     Venue is proper in this District because a substantial portion of the events forming the basis of this suit (including implementation of the illegal pay practices alleged in this litigation) occurred in this District.

**PARTIES**

21.     Plaintiff, Janet Shaulis, is a resident of Mitchell, Nebraska. She was employed by Defendant (and its predecessor entity) as a THN from February 2015 through December 2017, and signed a consent form to join this collective action lawsuit, which is attached hereto as ***Exhibit B***.

22.     Plaintiff, Jewel Arlene Key, is a resident of Citrus Heights, California. She was employed by Defendant (and its predecessor entity) as a THN from May 2000 through December 2016, and signed a consent form to join this collective action lawsuit, which is attached hereto as ***Exhibit C***.

23.     Additional individuals were or are employed by Defendant as THNs during the past three years and their consent forms will also be filed in this case.

24.    Defendant, Falcon Subsidiary LLC d/b/a AxisPoint Health, is a Delaware limited liability company headquartered in Westminster, Colorado.  Defendant is licensed to do business in the State of Colorado, has its principal place of business at 1100 Westmoor Circle, Westminster, Colorado 80021), and its registered agent for service of process in Colorado is Corporation Service Company located at 1900 W. Littleton Boulevard, Littleton, Colorado 80120.

25.    Upon information and belief, Defendant has employed over one thousand (1,000) THNs over the last three years.

26.    Plaintiffs are informed and believe, and allege thereon, that Defendant is responsible for the circumstances alleged herein, and proximately caused Plaintiffs and similarly situated THNs to be subject to the fraudulent, unlawful, unfair, and deceptive acts and practices complained of herein.

27.    At all times herein mentioned, Defendant approved of, condoned, and/or otherwise ratified each and every one of the acts or omissions complained of herein.

28.    At all times herein mentioned, Defendant's acts and omissions proximately caused the complaints, injuries, and damages alleged herein.

## GENERAL ALLEGATIONS

29.    Plaintiff, Janet Shaulis, was employed as a THN for Defendant from February 2015 through December 2017. Plaintiff Shaulis was paid an hourly wage and her last base hourly rate of pay (before any applicable shift differentials) was $25.00.  Plaintiff Shaulis typically worked Saturday, Sunday, Monday and Wednesday from 7:45 a.m. to 6:15 p.m. Plaintiff Shaulis ordinarily and routinely worked 40 or more hours per week.

30.    Plaintiff, Jewel Arlene Key, was employed as a THN for Defendant from May 2000 through December 2016. Plaintiff Key was paid an hourly wage and her last base hourly rate of pay (before any applicable shift differentials) was $32.40.  Plaintiff Key typically worked Thursday through Monday from 1:00 p.m. to 9:00 p.m. Plaintiff Key ordinarily and routinely worked 40 or more hours per week.

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

31.     Plaintiffs, along with Defendant's other THNs, are responsible for, among other things, responding to inbound telephone calls from patients of Defendants' client; evaluating the patient's needs; directing access to care; and communicating with physicians.

32.     The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's TSRs, are homogenous; in July 2008, it issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry. *See Exhibit A*.

33.     One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

34.     More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails."  *Id.*  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

35.     Defendant employs THNs who work remotely from their home residences in states across the country.

36.     Defendant requires its THNs to work a full-time schedule, plus overtime. However, Defendant does not compensate the THNs for all work performed. Specifically, Defendant fails to pay THNs for certain work performed "off-the-clock" at the beginning of each shift, during meal periods, and at the end of each shift.  Defendant's illegal compensation practices and policies result in THNs not being paid for all time worked, including overtime.

37.     Defendant requires THNs to use multiple computer programs, software programs, and applications in the course of performing their responsibilities. These programs and applications are an

6

integral, indispensable, and important part of the THNs' work as they cannot perform their jobs effectively without them.

38.    Regardless of medical specialty, Defendant's THNs perform the same basic job duties and are required to use the same or similar computer programs, software programs, applications, and phone systems.

39.    Pursuant to Defendant's illegal compensation practices and policies, Telemedicine Specialists and Advice Nurses are required to: 1) start-up and log-into computers, programs and applications, before each shift and *prior* to clocking into Defendant's timekeeping system; 2) perform computer, program and application log-in tasks off-the-clock during their uncompensated meal periods; and 3) shut-down and log-out of computers, programs and applications, subsequent to each shift and *after* clocking out of Defendant's timekeeping system.

A.    **Pre-Shift Off-the-Clock Work**

40.    Pursuant to Defendant's policies, training, and direction, Plaintiffs (and all other THNs) were required to start up and log into various secure computer programs, software programs, and applications in order to access information. The pre-shift startup and login process took substantial time on a daily basis with said time falling in a range of seven (7) to twenty (20) minutes per day, or even longer when technical issues arose.

41.    Before clocking in for each shift, Plaintiffs (and all other THNs) are required to undertake the following essential work tasks in chronological order:

- Turn-on/boot-up Thin Client computer device.

- Establish a connection to Defendant's virtual private network ("VPN").

- Open Defendant's "ADP" timekeeping system (but not allowed to clock into the system until just before their scheduled start of shift).

- Open up Defendant's Guidepoint charting program.

- Start-up and log-in to the following programs/applications that are utilized during their

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

shifts including, but not limited to: Finesse; Jabber; Insider; Live Chat.

- Finally, clock-in to Defendant's "ADP" timekeeping system, at which time Plaintiffs and the THNs began getting paid.

- Finally, Plaintiffs and the THNs dial into Defendant's Finesse phone system and change their status to "available."

42.    Defendant's THNs complete the above steps before being clocked-in and paid each shift; meaning that they are performing off-the-clock work in a range of seven (7) to twenty (20) minutes per shift without compensation.

43.    Consequently, Defendant maintains a common plan and policy pursuant to which it fails to pay Plaintiffs and its other THNs seven (7) to twenty (20) minutes per day of work performed in connection with their pre-shift startup and login activities.

44.    The unpaid off-the-clock work performed prior to each shift by Plaintiffs and other THNs directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as THNs.

### B.    Meal Period Off-the-Clock Work

45.    Defendant provides Plaintiffs and the THNs with one unpaid meal period per shift.

46.    In order to deduct an unpaid meal period from an employees' compensable time, an employee must be completely relieved of his or her employment duties for the entire lunch break. 29 CFR 785.19(a) states:

> Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

47.     However, Defendant does not provide Plaintiffs and the THNs with a legitimate bona fide meal period.

48.     Defendant fails to provide a bona fide unpaid meal period because it requires Plaintiffs and the THNs to return to their work stations prior to the end of their meal periods and then to spend off-the-clock time logging back into the necessary computer/software programs and applications needed to begin taking calls promptly at the end of their scheduled meal periods.

49.     The work performed by Plaintiffs and Defendant's THNs during their unpaid meal periods takes substantial time on a daily basis with said time averaging approximately one (1) to three (3) minutes per day, or more.

**C.    Post-Shift Off-the-Clock Work**

50.     Pursuant to Defendant's policies, training and direction, Plaintiffs and all other THNs are required to perform the following unpaid off-the clock tasks *after* logging-out of Defendant's timekeeping system:

- Log out of Defendant's virtual private network ("VPN").
- Log out of any other applications used by the THN during their shift that was not yet closed.
- Log out of and close Windows.
- Shutdown Thin Client computer device.

51.     The post-shift logout and shutdown process took substantial time on a daily basis with said time ranging from two (2) to three (3) minutes per shift, but could take substantially longer if Plaintiffs experience technical problems with the computer/software/applications or was required to perform program or system updates.

52.     Consequently, Defendant maintains a common plan and policy pursuant to which it fails to pay Plaintiff and its other THNs for two (2) to three (3) minutes per day of work performed in connection with their end of shift shutdown and log-out activities.

53.     The unpaid off-the-clock work performed subsequent to each shift by Plaintiffs and other THNs directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as THNs.

**D.    Exemplary Pay-Period to Illustrate Pre- and Post-Shift Compensation Deficiencies**

54.     Examples of a specific workweek where Defendant failed to pay Plaintiff Shaulis all overtime due for hours worked in excess of 40 hours (as mandated by the FLSA) include the following:

**Pay Period of 3/27/16 to 4/9/16**

- Plaintiff Shaulis worked at least 11.5 overtime hours, meaning that Plaintiff Shaulis worked 40 or more hours in one of the workweeks during the two week pay period. Plaintiff Shaulis was paid at a base hourly rate (before shift differential) of $25.00 per hour for her regular hours and was paid $40.18 per hour for the 11.5 overtime hours.

- With pre-shift time of 7 to 20 minutes per shift, meal-period time of 1 to 3 minutes per shift, and post-shift time of 2 to 3 minutes per shift, and based on Plaintiff Shaulis' 4 shift per week schedule, Plaintiff Shaulis should have been paid no less than an additional 40 to 104 minutes at her overtime rate of $40.18 during the week for which she was paid the 11.5 overtime hours.

*Exhibit D*.

55.     During the 2016 calendar year Plaintiff Key regularly worked 40 hours per week consisting of the following work schedule: Thursday through Monday from 1:00 p.m. to 9:00 p.m.

56.     Accordingly, during each week of the 2016 calendar year where Plaintiff Key worked 40 or more hours Defendant failed to pay her all the overtime due for hours worked in excess of 40 hours (as mandated by the FLSA, and daily overtime as mandated by California state law).  Based on Plaintiff Key's 5 shift per week schedule, Plaintiff Key should have been paid no less than an additional 50 to 130 minutes at her overtime rate during each week she worked 40 or more hours.

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

**E.**     **Defendant Benefitted from the Uncompensated Off-the-Clock Work**

57.     At all relevant times, Defendant directed and directly benefited from the work performed by Plaintiffs and similarly situated employees in connection with the above described pre-shift, meal period and post-shift activities performed by Plaintiffs and other THNs.

58.     At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of Plaintiffs and other THNs.

59.     At all relevant times, Defendant was able to track the amount of time Plaintiffs and the THNs spent in connection with the pre-shift, meal period and post-shift activities. However, Defendant failed to do so and failed to compensate Plaintiffs and other THNs for the off-the-clock work they performed.

60.     At all relevant times, Plaintiffs and the THNs were non-exempt hourly employees, subject to the requirements of the FLSA and the California Labor Code.

61.     At all relevant times, Defendant used its attendance and adherence policies against Plaintiffs and the THNs in order to pressure them into performing the pre-shift, meal period and post-shift off-the-clock work.

62.     Defendant expressly trained and instructed Plaintiffs and its other THNs to perform the above-described pre-shift activities before clocking into Defendant's timekeeping system and their shift's scheduled start time to ensure they were prepared to take calls at the moment their shifts began.

63.     At all relevant times, Defendant's policies and practices deprived Plaintiffs and the THNs of wages owed for the pre-shift, meal period and post-shift activities they performed. Because Defendant's THNs typically worked forty (40) hours or more in a workweek and/or eight (8) hours or more in a workday, Defendant's policies and practices also deprived them of overtime pay.

64.     Defendant knew or should have known that the time spent by Plaintiffs and other THNs in connection with the pre-shift, meal period and post-shift activities was compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

65.     Despite knowing Plaintiffs and other THNs performed work before and after their scheduled shifts and during their meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

## FLSA COLLECTIVE ACTION ALLEGATIONS

66.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All similarly situated current and former at-home hourly Telehealth Nurses and Nurse Advice Line Nurses who work or have worked for Defendant at any time from February 6, 2015 through judgment.*

(hereinafter referred to as the "FLSA Collective").   Plaintiffs reserve the right to amend this definition if necessary.

67.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated THNs.

68.     Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

69.     Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond 40 hours in a workweek.

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

70.     All of the work that Plaintiffs and the members of the FLSA Collective have performed has been assigned by Defendant, and/or Defendant has been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

71.     As part of its regular business practice, Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

a.  Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours that they worked in excess of 40 hours per workweek;

b.  Willfully failing to record all of the time that its employees, including Plaintiffs and the members of the FLSA Collective, have worked for the benefit of Defendant.

72.     Defendant is aware or should have been aware that federal law required it to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of 40 per workweek.

73.     Defendant's unlawful conduct has been widespread, repeated, and consistent.

74.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

75.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal-period time, and the amount of post-shift log-

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

out/shut-down time owed to each employee – does not vary substantially among the proposed FLSA Collective members.

76.     There are many similarly situated current and former THNs who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

77.     This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

78.     Those similarly situated employees are known to Defendant, are readily identifiable and can be located through Defendant's records.

79.     Plaintiffs estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will include several hundreds, if not thousands, of workers. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

80.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> ***All similarly situated current and former at-home hourly Telehealth Nurses and Nurse Advice Line Nurses who work or have worked for Defendant at any time during the applicable statutory period.***

(hereinafter referred to as the "Rule 23 Nationwide Class").  Plaintiffs reserve the right to amend this definition if necessary.

81.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical.  Plaintiffs reasonably estimate there are hundreds, if not thousands, of Rule 23 Nationwide Class members.  Rule 23 Nationwide Class members

should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

82.    There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class.  These common legal and factual questions, include, but are not limited to, the following:

a.    Whether Defendant failed to compensate members of the Rule 23 Nationwide Class for all time worked.

b.    Whether Defendant's non-payment of wages for all compensable time unjustly enriched Defendant.

83.    Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.  Plaintiffs' claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

84.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class and she retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

85.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

86.     This case will be manageable as a Rule 23 Class action.  Plaintiffs and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

87.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

88.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 CALIFORNIA CLASS ACTION ALLEGATIONS

89.     Plaintiff Key brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of all similarly situated current and former THNs employed by Defendant in the last four years in California.  Plaintiff proposes the following class definition:

> *All similarly situated current and former at-home hourly Telehealth Nurses and Nurse Advice Line Nurses who work or have worked for Defendant in California at any time from February 6, 2014 through judgment.*

Plaintiff Key reserves the right to amend the putative class definition if necessary.

90.     Plaintiff Key shares the same interests as the putative class and will be entitled under the California Labor Code to unpaid overtime compensation, attorneys' fees, and costs and lost interest owed to her under nearly identical factual and legal standards as the remainder of the putative class.

91.     The putative Rule 23 California Class meets the numerosity requirement of Rule 23(a)(1) because, during the relevant period, Defendant employed dozens, if not hundreds, of THNs throughout California. The Rule 23 California Class members are so numerous that joinder of all such persons is

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The precise number of Rule 23 California Class members should be readily available from a review of Defendant's personnel, scheduling, time, phone, and payroll records, and from input received from the putative Rule 23 California Class members.

92.     The putative Rule 23 California Class meets the commonality requirement of Rule 23(a)(2) because, during the relevant period, Defendant engaged in a common course of conduct that violated the legal rights of Plaintiff Key and the Rule 23 California Class.  Individual questions that Plaintiff Key's claims present, to the extent any exist, will be far less central to this litigation than the numerous material questions of law and fact common to the Rule 23 California Class, including but not limited to:

a.  Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 California Class member regular wages for each non-overtime hour worked.

b.  Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 California Class member overtime compensation for each overtime hour worked;

c.  Whether Defendant violated Labor Code sections 221 and 223 by making unlawful deductions to Rule 23 California Class members' wages;

d.  Whether Defendant failed to provide each Rule 23 California Class member with at least one 30-minute meal period on every workday of at least 5 hours and a second 30-minute meal period on every workday of at least 10 hours as required by the California Employment Law and Regulations;

e.   Whether Defendant violated section 226 of the Labor Code by willfully failing to provide accurate itemized wage statements showing the number of hours worked by each Rule 23 California Class member and the corresponding hourly rate;

f.  Whether Defendant violated section 1174 of the Labor Code by failing to maintain accurate records of hours worked and wages paid to Rule 23 California Class members;

g.  Whether Defendant was unjustly enriched by the work and services performed by Rule 23 California Class members without compensation;

h.  Whether Defendant engaged in unfair business practices in violation of Business and Professions Code section 17200 *et seq.*; and

i.  Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating California state law.

93.     The status of all individuals similarly situated to Plaintiff Key raises an identical legal question: whether Defendant's THNs are entitled to back wages, including overtime.

94.     The putative Rule 23 California Class meets the typicality requirement of Rule 23(a)(3) because Plaintiff Key and the putative Rule 23 California Class members were all employed by Defendant and performed their job duties without receiving wages, including overtime wages, owed for that work.

95.     The Rule 23 California Class meets the adequacy requirement of Rule 23(a)(4) because there is no apparent conflict of interest between Plaintiff Key and the putative Rule 23 California Class members, and because Plaintiff Key's attorneys have successfully prosecuted many complex class actions, including wage and hour class and collective actions, and will adequately represent the interests of Plaintiff Key and the putative Rule 23 California Class members.

96.     The putative Rule 23 California Class meets the predominance requirement of Rule 23(b)(3), because issues common to the Rule 23 California Class predominate over any questions affecting only individual members, including but not limited to, those listed above.

97.     The Rule 23 California Class meets the superiority requirement of Rule 23(b)(3) because allowing the parties to resolve this controversy through a class action would permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.

98.     Given the material similarity of the Rule 23 California Class members' claims, even if each Rule 23 California Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds or even thousands of identical actions.  Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources.  Alternatively, proceeding by way of a class

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

action would permit the efficient supervision of the putative Rule 23 California Class's claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

**COUNT I**
**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME WAGES**
**(FLSA COLLECTIVE ACTION)**

99.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

100.     At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

101.     At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

102.     Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

103.     Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

104.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

105.     At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform no less than ten (10) to twenty-six (26) minutes per shift (or more during shifts when they experienced technical problems) of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

106.     The off-the-clock work performed every shift by Plaintiffs and the FLSA Collective is an

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

107.    In workweeks where Plaintiffs other FLSA Collective members worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including the shift differential where applicable.  29 U.S.C. § 207.

108.    Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes for the THNs to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

109.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

### COUNT II
### UNJUST ENRICHMENT
### (RULE 23 NATIONWIDE CLASS ACTION)

110.    Plaintiffs re-allege and incorporate all paragraphs herein and further allege as follows.

111.    At all times relevant to this action, Defendant promised Plaintiffs and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on behalf of Defendant.

112.    Plaintiffs and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out the work they performed.

113.    By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

performed, Defendant was unjustly enriched.

114.    Plaintiffs and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

115.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Nationwide Class Member and enjoyed the benefits derived therefrom.

116.    Upon information and belief, Defendant used the monies owed to Plaintiffs and every other Rule 23 Nationwide Class Member to finance its various business expenditures.

117.    Defendant has been unjustly enriched by the retention of monies received pursuant to the sales and services Plaintiffs and the Rule 23 Nationwide Class procured on behalf of Defendant, without having compensated Plaintiffs for the same.

118.    Plaintiffs and the Rule 23 Nationwide Class suffered detriment as a result of Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiffs and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

119.    As a direct and proximate result of Defendant's actions, Plaintiffs and every other Rule 23 Nationwide Class Member have suffered damages, including, but not limited to, loss of wages.

### COUNT III
### VIOLATION OF CALIFORNIA LABOR CODE §§ 223, 510, 1194, 1197.1, 1198
### AND IWC WAGE ORDER 4 – FAILURE TO PAY OVERTIME WAGES
### (RULE 23 CALIFORNIA CLASS ACTION)

120.    Plaintiff Key re-alleges and incorporates all previous paragraphs herein.

121.    At all relevant times, Defendant regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to their employees, especially overtime compensation.

122.    At all relevant times, Plaintiff Key and the Rule 23 California Class regularly performed

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

non-exempt work and were thus subject to the overtime requirements of California law.

123.    California Labor Code §§ 223, 510, 1194, 1197.1 1198 and Industrial Welfare Commission ("IWC") Wage Order No. 4 §§ 2(K) provide that; (a) employees must be paid no less than the applicable minimum wage for all hours worked; (b) employees are entitled to compensation at the rate of one and one-half times their regular rate of pay for all hours worked in excess of eight (8) hours in a workday up to twelve (12) hours in a workday, in excess of forty (40) hours in a workweek, and for the first eight (8) hours of work on the seventh (7th) consecutive day or a workweek; and (c) employees are entitled to compensation at the rate of twice their regular rate of pay for all hours worked in excess of twelve (12) hours in a workday, and in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

124.    At all relevant times, Plaintiff Key and the Rule 23 California Class regularly worked in excess of eight (8) hours in a workday and/or in excess of forty (40) hours in a workweek.

125.    At all relevant times, Defendant failed and refused to pay Plaintiff Key and the Rule 23 California Class members for any and all hours actually worked in excess of the scheduled shift.

126.    Defendant intentionally, maliciously, fraudulently and with the intent to deprive the Rule 23 California Class of their ability to earn a living so as to reduce their labor costs, knowingly and willingly implemented a scheme or artifice to avoid paying overtime by reducing the rate of pay to Plaintiff Key and other Rule 23 California Class members who worked overtime hours.

127.    Plaintiff Key and the Rule 23 California Class were entitled to receive overtime compensation at their lawful regular rate of pay, including any shift differential where applicable. Defendant's failure to pay lawful premium overtime wages, as alleged above, was a willful violation of Labor Code §§ 223, 510, 1194, 1197.1, 1198, and IWC Wage Order No. 4.

128.    Wherefore, Plaintiff Key demands payment of the unpaid balance of the full amount of

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

wages due for unpaid time worked, as well as overtime premiums owing, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194 and 1194.2 as a result of Defendant's, failure to pay for all time worked and such premium compensation, as is required under California law.

**COUNT IV**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 223, 1194, 1197, 1197.1**
**AND IWC WAGE ORDER 4 – FAILURE TO PAY MINIMUM WAGES AND REGULAR**
**WAGES FOR ALL HOURS WORKED**
**(RULE 23 CALIFORNIA CLASS ACTION)**

129.    Plaintiff Key re-alleges and incorporates all previous paragraphs herein.

130.    At all relevant times, Defendant regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to its employees, including minimum wage and regular wages for all hours worked.

131.    California Labor Code §§ 223, 1194, 1197, 1197.1 and Industrial Welfare Commission ("IWC") Wage Order No. 4 §§ 2(K), 4(B), provide that employees must be paid no less than the applicable minimum wage for all hours worked. *See also Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323 (2005) (indicating that California's Labor Code requires payment for all hours worked at the employee's regular rate of pay).

132.    At all relevant times, Defendant failed and refused to pay Plaintiff Key and the Rule 23 California Class members minimum wage and regular wages for all hours worked including the off-clock-work alleged in this Complaint.

133.    Defendant intentionally, maliciously, fraudulently and with the intent to deprive Plaintiff Key and the Rule 23 California Class of their ability to earn a living so as to reduce their labor costs, knowingly and willingly implemented a scheme or artifice to avoid paying Plaintiff Key and other Rule 23 California Class members minimum wage and regular wages for all hours worked.

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

134.    Plaintiff Key and the Rule 23 California Class were entitled to receive wages at their lawful regular rate of pay, including any shift differential where applicable, for all hours worked including the off-the-clock work alleged in this Complaint. Defendant's failure to pay such wages, as alleged above, was a willful violation of California Labor Code §§ 223, 1194, 1197, 1197.1 and IWC Wage Order No. 4 §§ 2(K), 4(B)

135.    Wherefore, Plaintiff Key demands payment of the unpaid balance of the full amount of wages due for unpaid time worked at their lawful regular rate of pay, including any shift differential where applicable, and including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194 and 1194.2 as a result of Defendant's, failure to pay for all time worked as is required under California law.

**COUNT V**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 221 AND 223**
**UNLAWFUL DEDUCTIONS**
**(RULE 23 CALIFORNIA CLASS ACTION)**

136.    Plaintiff Key re-alleges and incorporates all previous paragraphs herein.

137.    At all relevant times, Defendant regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to its employees, especially overtime compensation, minimum wage and regular wages for all hours worked.

138.    Defendant made deductions from Plaintiff Key's and the Rule 23 California Class members' paychecks in the amount of the overtime premiums, minimum wage and regular wages earned by the employees during the pay period so as to avoid paying overtime compensation, minimum wage and regular wages.

139.    California Labor Code § 221 provides it is unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by employer to employee.

140.    Labor Code § 223 provides that where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to

24

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

pay the wage designated by statute or by contract. Labor Code section 225 further provides that the violation of any provision of Labor Code §§ 221 and 223 is a misdemeanor.

141.    As a result of the conduct alleged above, Defendant has unlawfully collected or received from Plaintiff Key and the Rule 23 California Class part of the wages paid to their employees.

142.    Wherefore, Plaintiff Key demands the return of all wages unlawfully deducted from the paychecks, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 225.5 and 1194.

<u>COUNT VI</u>
<u>VIOLATION OF CALIFORNIA LABOR CODE §§ 226.7, 512 AND AND IWC WAGE ORDER
4 – FAILURE TO PROVIDE MEAL BREAKS
(RULE 23 CALIFORNIA CLASS ACTION)</u>

143.    Plaintiff Key re-alleges and incorporates all previous paragraphs herein.

144.    California Labor Code §§ 226.7, 512, and Industrial Welfare Commission ("IWC") Wage Order No. 4 § §11(A) and (B) provide that an employer may not employ a person for a work period of more than five (5) hours without providing the employee with a meal period of not less than thirty (30) minutes, and may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than (30) minutes.

145.    At all relevant times, Plaintiff Key and the Rule 23 California Class consistently worked in excess of five (5) or ten (10) hours in a day.

146.    At all relevant times, Defendant regularly required employees to perform work during their first and/or second meal periods without proper compensation. Defendant's practice of requiring employees to perform work during their legally mandated meal periods without premium compensation is a violation of Labor Code §§ 226.7 and 512, and IWC Wage Order No. 4 § §11(A) and (B).

147.    Defendant purposefully elected not to provide meal periods to Plaintiff Key and the Rule 23 California Class members, and Defendant acted willfully, oppressively, and in conscious disregard of the rights of Plaintiff Key and the Rule 23 California Class members in failing to do so.

148.    Plaintiff Key is informed and believes Defendant did not properly maintain records pertaining to when Plaintiff Key and the Rule 23 California Class members began and ended each meal

period, in violation of Labor Code §1174 and IWC Wage Order No. 4 § §11(A) and (B).

149.    As a result of Defendant's knowing, willful, and intentional failure to provide meal breaks, Plaintiff Key and the Rule 23 California Class members are entitled to recover one (1) additional hour of pay at the employee's regular rate of pay for each work day that a meal period was not provided, pursuant to California Labor Code § 226.7 and IWC Wage Order No. 7 § 11(D), and penalties, reasonable attorneys' fees, and costs pursuant to California Labor Code §§ 218.5.

150.    Defendant's wrongful and illegal conduct in failing to provide Plaintiff Key and the Rule 23 California Class members with meal breaks or to provide premium compensation, unless and until enjoined by order of this Court, will continue to cause great and irreparable injury to Plaintiff Key and the Rule 23 California Class members in that Defendant will continue to violate these laws unless specifically ordered to comply with the same. The expectation of future violations will require current and future employees to repeatedly and continuously seek legal redress in order to gain compensation to which they are already entitled. Plaintiff Key and the Rule 23 California Class members have no other adequate remedy at law to insure future compliance with the laws alleged herein to have been violated.

151.    Wherefore, Plaintiff Key demands pursuant to Labor Code Section 226.7(b) that Defendant pay each Rule 23 California Class member one additional hour of pay at the Rule 23 California Class member's regular rate of compensation for each work day that the meal period was not provided.

**COUNT VII**
**VIOLATION OF CALIFORNIA LABOR CODE § 226**
**FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS**
**(RULE 23 CALIFORNIA CLASS ACTION)**

152.    Plaintiff Key re-alleges and incorporates all previous paragraphs herein.

153.    California Labor Code § 226 provides that every employer shall, semi-monthly or at the time of payment of wages, furnish each employee, either as a detachable part of the check or separately, an accurate, itemized statement in writing showing gross wages earned, total hours worked, and the applicable hourly rates and corresponding number of hours worked. California Labor Code § 1174(d) and California Wage Order 4-2001 § 7(A) likewise require employers to maintain records of hours worked daily and wages paid to employees.

154.     At all relevant times, Defendant failed to furnish Plaintiff Key and the Rule 23 California Class members, either semi-monthly or at the time of each payment of wages, an accurate, itemized statement conforming to the requirements of California Labor Code § 226.

155.     At all relevant times, Defendant also failed to maintain accurate records of hours worked daily and wages paid to employees as required by California Labor Code § 1174(d) and California Wage Order 4-2001 § 7(A).

156.    Plaintiff Key is informed and believes that Defendant knew or should have known that Plaintiff Key and the Rule 23 California Class members were entitled to receive wage statements compliant with California Labor Code § 226, and that Defendant willfully and intentionally failed to provide Plaintiff Key and the Rule 23 California Class members with such accurate, itemized statements.

157.     Wherefore Plaintiff Key demands that Defendant pay each and every Rule 23 California Class member fifty dollars ($50.00) for the initial pay period in which the violation occurred and one hundred dollars ($100.00) for each subsequent violation, up to a maximum of four thousand dollars ($4,000.00) pursuant to California Labor Code § 226, as well as reasonable attorneys' fees and costs.

## COUNT VIII
## VIOLATION OF BUSINESS AND PROFESSIONS CODE, § 17200, *et seq*.
## (RULE 23 CALIFORNIA CLASS ACTION)

158.    Plaintiff Key re-alleges and incorporates all previous paragraphs herein.

159.    Defendant engaged and continues to engage in unfair business practices in California by practicing, employing and utilizing the unlawful practices described above, including (a) training and directing Plaintiff Key and the Rule 23 California Class to work off-the-clock without compensation; (b) making deductions to Plaintiff Key's and the Rule 23 California Class members' paychecks to recover overtime premiums, minimum wage and regular wages earned by the employee; (c) requiring Plaintiff Key and the Rule 23 California Class to work overtime without lawful premium compensation; (d) failing to provide lawful meal breaks or premium compensation in lieu thereof; and (e) failing to provide accurate, itemized wage statements.

160.    In addition, the conduct alleged in each of the previously stated causes of action constitute

an unlawful and for unfair business practice within the meaning of Business & Professions Code § 17200, *et seq*.

161.  As a result of Defendant's conduct, Plaintiff Key and the Rule 23 California Class have been harmed as described in the allegations set forth above.

162.  The actions described above, constitute false, unfair, fraudulent and deceptive business practices within the meaning of California Business & Professions Code § 17200, *el seq*. By and through such unfair, unlawful and/or fraudulent business practices, Defendant has obtained valuable property, money and services from Plaintiff Key and the Rule 23 California Class, and has deprived Plaintiff Key and the Rule 23 California Class fundamental rights and privileges guaranteed to all employees under California law.

163.  Defendant has been unjustly enriched by the policies and practices described herein, and those policies and practices conferred an unfair business advantage on Defendant over other businesses providing similar services which routinely comply with the requirements of California law.

164.  Plaintiff Key seeks, on her own behalf, and on behalf of the putative Rule 23 California Class members, full restitution of all monies withheld, acquired and/or converted by Defendant by means of the unfair practices complained of herein, as necessary and according to proof, and/or disgorgement of all profits acquired by Defendant by means of the acts and practices described herein.

165.  Plaintiff Key seeks, on her own behalf, and on behalf of other Rule 23 California Class members similarly situated, an injunction to prohibit Defendant from continuing to engage in the unfair business practices complained of herein. Defendant's unlawful conduct, as described above, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiff Key and all Rule 23 California Class members in that the Defendant will continue to violate these California laws unless specifically ordered to comply with the same. This expectation of future violations will require current and future employees to repeatedly and continuously seek legal redress in order to gain compensation to which they are entitled under California law. Plaintiff Key and the Rule 23 California Class have no other adequate remedy at law to insure future compliance with the California labor laws and wage orders alleged to have been violated herein.

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

**COUNT IX**
**PRIVATE ATTORNEY GENERAL ACT ("PAGA")**
**VIOLATION OF CALIFORNIA LABOR CODE § 2698, *et seq.***
**(Notice of Claim, To Be Pursued After Exhaustion)**

166.  Plaintiff Key re-alleges and incorporates all previous paragraphs herein.

167.  Plaintiff Key is an "aggrieved employee" under PAGA, as she has been employed by Defendant during the applicable statutory period and suffered one or more of the Labor Code violations herein.  As such, Plaintiff Key seeks to recover, on behalf of herself and all other current and former aggrieved employees of Defendant ("PAGA Group"), the civil penalties provided by PAGA, plus reasonable attorneys' fees and costs.

168.    Plaintiff Key seeks to recover the PAGA civil penalties through a representative action permitted by PAGA and the California Supreme Court in *Arias v. Superior Court*, 46 Cal. 4th 969 (2009). Therefore, class certification of the PAGA claims is not required, but Plaintiff Key may choose to seek certification of the PAGA claims.

169.    Plaintiff Key seeks to pursue remedies pursuant to PAGA for the following violations.

a.      Failure to Pay Overtime: Defendant unlawfully failed to pay Plaintiff and the PAGA Group overtime compensation in violation of Cal. Labor Code §§ 223, 510, 1194, 1197.1, 1198 and California Wage Order No. 4-2001.

b.      Failure to Pay Minimum Wages and Regular Wages: Defendant unlawfully failed to pay Plaintiff and the PAGA Group minimum wage and regular wage compensation in violation of Cal. Labor Code §§ 223, 1194, 1197, 1197.1 and California Wage Order No. 4-2001.

c.      Payment of Wages Below Designated Rate and Taking of Unlawful Deductions: Defendant unlawfully paid Plaintiff Wolf and the PAGA Group at below the designated rate in violation of California Wage Order No. 4-2001 and Cal. Labor Code §§ 221 and 223, as detailed                                                                                                          herein.

d.      Failure to Provide Meal Breaks: Defendant unlawfully failed to provide Plaintiff and the PAGA Group meal breaks as required by Cal. Labor Code 226.7, 512, and California Wage Order No. 4-2001.

e.      Failure to Provide Complete and Accurate Wage Statements:   Defendant failed to provide complete and accurate wage statements containing all wages due to Plaintiff and the PAGA

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

Group, in violation of California Wage Order No. 4-2001 and Cal. Labor Code § 226(a), as detailed herein.

    f.    Failure to Keep Accurate Payroll Records: Defendant failed to provide complete and accurate wage statements regarding all wages due to Plaintiff and the PAGA Group, in violation of California Wage Order No. 4-2001 and Cal. Labor Code § 1174 et seq., as detailed herein.

170.    California Labor Code § 2698, *et seq*. imposes a civil penalty of one hundred dollars ($100) per pay period, per aggrieved employee for the initial violation of Labor Code §§ 221, 223, 226, 226.7, 510, 512, 1174, 1194, 1197, 1197.1 and 1198, and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

171.    Plaintiff has taken steps to ensure full compliance with the procedural requirements specified in California Labor Code 2699.3 as to each of the alleged violations. On January 31, 2018, Plaintiff Key provided notice to the LWDA and the employer of her claims based on the alleged Labor Code violations, including the facts and theories supporting these claims.

172.    Under PAGA, upon exhaustion, Plaintiff Key and the State of California are entitled to recover the maximum penalties permitted by law for the violations of the Cal. Labor Code that are alleged in this Complaint.

173.    Enforcement of statutory provisions to protect workers and to ensure proper and prompt payment of wages is a fundamental public interest. Plaintiff Key's successful enforcement of important rights affecting the public interest will confer a significant benefit upon the general public. Private enforcement of these rights is necessary, as no public agency has pursued enforcement. Plaintiff Key is incurring a financial burden in pursuing this action, and it would be against the interest of justice to require the payment of attorneys' fees and costs from any recovery obtained, pursuant to, *inter alia*, California Labor Code § 2699.

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Janet Shaulis and Jewel Arlene Key, on their own behalf and on the

behalf of the putative Collective, the Rule 23 Nationwide Class, the Rule 23 California Class members,

and the PAGA Group, request judgment as follows:

a.    Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b.    Designating Plaintiffs as Representatives of the proposed FLSA Collective;

c.    Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all those individuals who are similarly situated to Plaintiffs, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential collective members of their rights under the FLSA;

d.    Certifying the proposed Rule 23 Nationwide Class;

e.    Designating Plaintiffs as Representatives of the proposed Rule 23 California Class;

f.    Certifying the proposed Rule 23 California Class;

g.    Designating Plaintiff Key as Representative of the proposed Rule 23 California Class;

h.    Awarding a service award to the Class Representatives in recognition of the time, effort, and risk they incurred in bringing this action and as compensation for the value they provided to the Class members;

i.    Appointing Sommers Schwartz, P.C. as Class Counsel;

j.    Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, California Labor Code, and UCL;

k.    Declaring that Defendant willfully violated the Fair Labor Standards Act and its attendant regulations as set forth above;

l.    Granting judgment in favor of Plaintiffs and against Defendant and awarding the amount of unpaid overtime wages calculated at the rate of one and one-half (1.5) of Plaintiffs' regular rate (including the shift differential where applicable) multiplied by all off-the-clock hours that Plaintiff worked in excess of eight (8) hours per day and/or forty (40) hours per week for the past four years;

31

m.     Awarding liquidated damages in an amount equal to the amount of unpaid overtime wages found due and owing;

n.     Granting judgment in favor of Plaintiffs and against Defendant and awarding the amount of unpaid minimum wages and regular wages calculated at Plaintiffs' regular rate (including the shift differential where applicable) multiplied by all off-the-clock hours that Plaintiff worked for the past four years;

o.     Awarding liquidated damages in an amount equal to the amount of unpaid minimum wages and regular wages found due and owing;

p.     For statutory and civil penalties pursuant to Labor Code §§ 225.5, 226(e), 226.3, 226.7, and 2699;

q.     For disgorgement and restitution to Plaintiff Key and other similarly affected Class members of all funds unlawfully acquired by Defendant by means of any acts or practices declared by this Court to violate the mandate established by California Business and Professions Code § 17200 *et seq.*;

r.     For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendant and determined to have been wrongfully acquired by Defendant as a result of violations of California Business and Professions Code § 17200, *et seq.*;

s.     For an injunction prohibiting Defendant from engaging in the unfair business practices complained of herein;

t.     For an injunction requiring Defendant to give notice to persons to whom restitution is owing of the means by which to file for restitution;

u.     For actual damages or statutory penalties according to proof as set forth in California Labor Code §§ 226, 1174, and IWC Wage Order No. 7, § 7(A) related to wage statements and record keeping;

v.     For an order requiring Defendant to show cause, if any there be, why they should not be enjoined and ordered to comply with the applicable California Industrial Welfare Commission wage orders related to record keeping for Defendant's employees related to same; and for an order enjoining and restraining Defendant and their agents, servants and employees related thereto;

w.     For pre-judgment interest as allowed by California Labor Code §§ 218.6, 1194, and California Civil Code § 3287 and other statutes;

x.     Awarding civil penalties for violations of California Labor Code §§ 221, 223, 226, 226.7, 510, 512, 1174, 1194, 1197, 1197.1, 1198, pursuant to California Labor Code § 2698, *et seq.*;

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

1    y.     For reasonable attorneys' fees, expenses, and costs as provided by the FLSA, 29 U.S.C. 216(b), California Labor Code §§ 218.5, 226(e) and (h), 1194, and 2699, and California Code of Civil Procedure § 1021.5; and

z.     For such other and further relief the Court may deem just and proper.

### JURY DEMAND

Plaintiffs, Janet Shaulis and Jewel Arlene Key, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Respectfully Submitted,

Dated: February 6, 2018

Kevin J. Stoops

By:    *s/ Kevin J. Stoops*
Kevin J. Stoops
Jason T. Thompson (*admission forthcoming*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300
Facsimile: (248) 436-8453
kstoops@sommerspc.com
jthompson@sommerspc.com

*Trial Counsel for Plaintiff and Proposed Class and Collective Members*

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND