# EXHIBIT 3

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "Settlement" or "Agreement") is made by and between Janet Shaulis and Jewel Arlene Key (each a "Plaintiff," and collectively "Plaintiffs") and Falcon Subsidiary LLC d/b/a AxisPoint Health ("AxisPoint"). Plaintiffs and AxisPoint collectively are referred to in this Agreement as the "Parties" and each a "Party."

## I.    DEFINITIONS

In addition to other terms defined in this Agreement, the terms below have the following meaning in this Agreement:

A.    "Action" means the civil action titled "*Janet Shaulis and Jewel Arlene Key, individually and on behalf of all other similarly situated individuals, Plaintiffs v. Falcon Subsidiary LLC d/b/a AxisPoint Health, a Delaware limited liability company, Defendant*," (the "Action"), designated as Case No. 1:18-cv-00293-CMA, currently pending in the United States District Court for the District of Colorado, Denver Division (the "Court").

B.    "Telehealth Nurse" (hereinafter "THN" or "THNs") means a home-based nurse who fields patient calls whom AxisPoint has employed on an hourly basis in the United States.

C.    "CAFA Notice" means a notice of proposed settlement pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715.

D.    "California Claims Payments" means the additional amounts paid to the five THNs who were employed by AxisPoint in California during the Class Period in recognition of their claims arising under California state law, pursuant to section III.B.

E.    "Class" means all current and former hourly THNs (a home-based nurse who field patient calls) who work or have worked for AxisPoint at any time from February 6, 2015 (for all THNs employed in states other than California) and from February 6, 2014 (for all THNs employed in California), through the date on which the Court grants preliminary approval of the Settlement (the "Class Period"). The Class does not include any individuals who already have resolved the claims asserted in the Action, whether by release or adjudication, except to the extent that release or adjudication does not extend to claims accruing after the effective date of that release or adjudication. As of April 30, 2018, the Class has approximately 457 members.

F.    "Class Counsel" means Kevin J. Stoops and Jason J. Thompson of Sommers Schwartz, P.C.

G.    "Class Counsel Fees and Expenses Payment" means the amount awarded to Class Counsel by the Court for their attorneys' fees and expenses in connection with the Action, including their pre-filing investigation, their commencement and

prosecution of the Action and all related litigation activities, this Settlement (including documenting the Settlement, seeking court approval of the Settlement, attending to administration of the Settlement, and obtaining dismissal of the Action), and all post-Settlement compliance procedures.

H.      "Class Member Notice" means the Notice of Proposed Settlement, Conditional Certification of Settlement Class, Preliminary Approval of Settlement, and Hearing Date for Final Court Approval evidenced by Exhibit A to this Agreement and incorporated by reference into this Agreement.

I.      "Class Members" means all persons who are members of the Class.

J.      "Class Member Settlement Information Sheet" means the Class Member Settlement Information Sheet evidenced by Exhibit B to this Agreement and incorporated by reference into this Agreement.

K.      "Class Notice Packet" means the Class Member Notice, the Class Member Settlement Information Sheet, and the form of Election Not to Participate in Settlement (evidenced by Exhibit C to this Agreement and incorporated by reference into this Agreement).

L.      "Class Representative Service Payments" means the payments made to the Plaintiffs in their capacity as Class Representatives to compensate them for initiating and pursuing the Action, undertaking the prosecution of the Action, and granting the general release under the Settlement.

M.      "Effective Date" means the date by which all of the following have occurred:

1.      The deadline for AxisPoint to void this Settlement pursuant to section III.F.6. has passed and AxisPoint has not done so;

2.      the Court enters the Judgment; and

3.      the Judgment becomes Final, as defined below.

N.      "Final" means the following date, as applicable:

1.      If no objection to the Settlement was raised before the Court, the date on which the Court enters the Judgment.

2.      If an objection to the Settlement was raised before the Court, the last date on which a notice of appeal from the Judgment may be timely filed, and none is filed.

3.      If an objection to the Settlement was raised before the Court and if an appeal from the Judgment is timely filed, the last of the following dates: the last date by which a petition for a writ of *certiorari* to the U.S. Supreme Court of a decision by the U.S. Court of Appeals for the Tenth Circuit (the "Tenth

2

Circuit") affirming the Judgment or denying a petition for review could be timely filed, or, if no notice of appeal to the Tenth Circuit is timely filed, the last date by which a petition for a writ of *certiorari* to the U.S. Supreme Court of a decision by the District Court may be timely filed, and none is filed;

O.    "Final Approval Hearing" means the hearing to be conducted by the Court, pursuant to Rule 23(e), Federal Rules of Civil Procedure to determine whether to approve finally and implement the terms of this Agreement.

P.    "Judgment" means the Order Granting Final Approval of Class Action Settlement and Entering Final Judgment entered by the Court.  With the motion for Final Approval, the Parties will file or lodge a proposed Order Granting Final Approval of Class Action Settlement and Entering Final Judgment.

Q.    "Net Settlement Amount" means the amount from the Total Settlement Amount that is available for distribution to Participating Class Members after deductions for (a) the Class Representative Service Payments; (b) the Class Counsel Fees and Expenses Payment; (c) the Settlement Administrator's fees and expenses; and (d) the California Claims Payments.  The parties will apply the formulas and terms of this Agreement set forth below for allocating the portion of the Net Settlement Amount that they designate for settlement payments to Participating Class Members.

R.    "Participating Class Member" means a Class Member who does not timely and validly submit an Election Not to Participate in Settlement by following the procedure set forth in this Agreement.

S.    "Preliminary Approval" means the Court's preliminary approval of the Settlement without material change, or with material changes to the Settlement to which the Parties agree.

T.    "Preliminary Approval Order" means the order entered by the Court granting preliminary approval of the Settlement.  With the Motion for Preliminary Approval, the Parties will file or lodge a proposed Preliminary Approval Order.

U.    "Settlement Administrator" means the administrator proposed by the Parties and appointed by the Court to administer the Settlement.

V.    "Settlement Share" means the portion of the Net Settlement Amount allocable to each Participating Class Member as provided by this Agreement.

W.    "Work Hours" is the number of hours worked by the Class Member for AxisPoint as an hourly THN during the Class Period.  The amount of Work Hours will be based on AxisPoint's timekeeping records.

X.    "AxisPoint's Counsel" means Chris Scheithauer of McDermott Will & Emery LLP and Erin Eiselein and Martine Wells of Brownstein Hyatt Farber Schreck, LLP.

3

## II.    RECITALS

A.    On February 6, 2018, Plaintiffs Janet Shaulis and Jewel Arlene Key commenced a civil action against AxisPoint entitled "*Janet Shaulis and Jewel Arlene Key, individually and on behalf of all other similarly situated individuals, Plaintiffs v. Falcon Subsidiary LLC d/b/a AxisPoint Health, a Delaware limited liability company, Defendant*," designated as Case No. 1:18-cv-00293-CMA, currently pending in the United States District Court for the District of Colorado, Denver Division.

B.    Plaintiffs' complaint asserts the following: (1) violations of the FLSA, 29 U.S.C. § 201 *et seq.*, for failure to pay overtime wages; (2) unjust enrichment; (3) violations of California Labor Code sections 223, 510, 1194, 1197, 1197.1 and 1198, and Industrial Welfare Commission ("IWC") Wage Order 4, for failure to pay overtime; (4) violations of California Labor Code sections 223, 1194, 1197, 1197.1, and IWC Wage Order 4, for failure to pay minimum wages and regular wages for all hours worked; (5) violations of California Labor Code sections 221 and 223 for unlawful deductions; (6) violations of California Labor Code sections 226.7 and 512, and IWC Wage Order 4, for failure to provide meal breaks; (7) violations of California Labor Code section 226 for failure to provide accurate wage statements; (8) violation of California Business and Professions Code section 17200, *et seq.*; and (9) violations of PAGA, Cal. Lab. Code § 2698 *et seq.* On May 15, 2018, the Parties filed a Stipulation for Partial Dismissal with Prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) dismissing with prejudice the PAGA claim (Count IX) as to Plaintiff Jewel Arlene Key (the only plaintiff who asserted Count IX).

C.    On February 7, 2018, Nancy Schwab-Ketner consented to join the action as an opt-in plaintiff. On February 9, 2018, Cindy Burrus Partlow consented to join the action as an opt-in plaintiff. On March 29, 2018, Sharon Williams consented to join the action as an opt-in plaintiff. On April 6, 2018, Virginia Jones McRae consented to join the action as an opt-in plaintiff.

D.    On April 23, 2018, the Parties participated in a mediation presided over by Robbie Barr.  During the mediation, each side, represented by its respective counsel, recognized the substantial risk of an adverse result in the Action and agreed to settle the Action, and all other matters covered by this Agreement.  Any agreements, understandings, or representations between the Parties have now been replaced and superseded by this Agreement.

E.    This Agreement represents a compromise and settlement of highly disputed claims. Nothing in this Agreement is intended or will be construed as an admission by AxisPoint that Plaintiffs' claims in the Action have merit or that it has any liability to Plaintiffs or the Class, or as an admission by Plaintiffs that AxisPoint's defenses in the Action have merit.

Based on these Recitals, the Parties agree as follows:

III.    **SETTLEMENT TERMS AND CONDITIONS**

A.    **Total Settlement Amount.**  Subject to the terms and conditions of this Agreement, including but not limited to section III.F.6, the total amount that AxisPoint will pay under the Settlement (the "Total Settlement Amount") is $595,000.  The Total Settlement Amount is all-inclusive of all payments contemplated under the Settlement, and will cover: (a) all settlement shares to all Participating Class Members; (b) the Class Representative Service Payments; (c) the Class Counsel Fees and Expenses Payment; (d) the Settlement Administrator's fees and expenses; and (e) the California Claims Payments. Over and above the Total Settlement Amount, AxisPoint shall not assume responsibility for any other fees or expenses incurred by Plaintiffs, Class Counsel, or any third party incurred in implementing the terms and conditions of this Agreement and securing the Judgment pursuant to the Agreement.

B.    **California Claims Payments.** Consistent with the applicable procedures and Timing of Settlement Payments set forth in this Settlement, the Settlement Administrator shall make the following payments from the Total Settlement Amount to Judy Gallo, Cynthia Macias, Nila Fletcher, Jewel Arlene Key and Nancy Schwab-Ketner, in recognition of their claims arising under California state law:

| | |
|---|---|
| Judy Gallo: | $3,000 |
| Cynthia Macias: | $3,000 |
| Nila Fletcher: | $2,000 |
| Jewel Arlene Key: | $2,000 |
| Nancy Schwab-Ketner: | $2,000 |

C.    **Distribution to Participating Class Members.**  Subject to the terms and conditions of this Agreement, the Settlement Administrator will allocate settlement shares from the Net Settlement Amount to Participating Class Members as follows:

1.    **To Participating Class Members.**  All Class Members other than those who timely and properly elect not to participate in the Settlement by submitting an Election Not to Participate in Settlement will be Participating Class Members and bound by the Settlement, including its release of claims, and entitled to receive Settlement Shares.  Each Participating Class Member's Settlement Share shall be calculated as follows:

a.    The Settlement Administrator will take the number of Work Hours recorded by the Participating Class Member.

b.    For every week in which the Participating Class Member worked at least forty (40) hours, the Settlement Administrator will multiply the Participating Class Member's Work Hours by a factor of 1.5.

c. The Settlement Administrator then will adjust the Participating Class Member's Work Hours (up or down) by a factor that is equal to the ratio of the Participating Class Member's most recent hourly base rate of pay as a THN during the Class Period (including applicable shift differential) compared to the average most recent hourly base rate of pay of all Participating Class Members during the Class Period.

d. The Settlement Administrator then will divide the Participating Class Member's Work Hours (adjusted as above where applicable) by the total Work Hours for all Participating Class Members (also adjusted as above where applicable).

e. The ratio yielded by the division done in section III.C.1.d. above will be multiplied by the Net Settlement Amount to yield the Participating Class Member's Settlement Share.

f. **Effect of Non-Participating Class Members.** Class Members who timely and properly submit an Election Not to Participate in Settlement will not participate in or be bound by the Settlement; will not receive a Settlement Share; and will not be included with those other Participating Class Members counted for purposes of the calculation of Settlement Shares, but they will retain their right, if any, to pursue an individual claim against AxisPoint that would have been released under the Settlement had they been Participating Class Members. The Settlement Share that otherwise would have been payable to such Class Member will be retained in the Settlement Amount for distribution to all other Participating Class Members.

2. **Tax Treatment.**

a. Thirty-three percent (33%) of each Settlement Share and California Claims Payment (the "Wage Portion") is intended to settle each Participating Class Member's claims for unpaid wages. Accordingly, the Wage Portion will be reduced by applicable payroll tax withholding and deductions, and the Settlement Administrator will issue the appropriate W-2 Forms with respect to the Wage Portion. The Settlement Administrator shall be responsible for calculating, withholding and paying the payroll tax withholdings to the applicable authorities with the necessary reports, submitting copies to AxisPoint's counsel. Each Participating Class Member shall be responsible for the employee portion of payroll taxes out of their respective Wage Portion. AxisPoint is responsible for the employer's share of payroll taxes, which it shall deposit with the Settlement Administrator along with the Total Settlement Amount after being notified of such amount by the Settlement

Administrator and consistent with the timing of depositing the Total Settlement Amount.

b.    Sixty-seven percent (67%) of the Settlement Share and California Claims Payment (the "Non-Wage Portion") is intended to settle each Participating Class Member's claims for all interest, penalties, and liquidated damages. Accordingly, the Non-Wage Portion will not be reduced by payroll tax withholding and deductions. Instead, the Settlement Administrator will issue a Form 1099 where required with respect to the Non-Wage Portion.

D.    **Payments to Plaintiffs, Class Counsel, and Settlement Administrator.** Subject to the terms and conditions of this Agreement, the Settlement Administrator will make the following payments out of the Total Settlement Amount as follows:

1.    **To Plaintiffs:** In addition to their Settlement Shares, Plaintiffs will apply to the Court for a Class Representative Service Payment from the Total Settlement Amount of not more than $15,000 (to be allocated in the amount of $7,500 to Janet Shaulis and $7,500 to Jewel Arlene Key) in consideration of their initiating and pursuing the Action and undertaking the risk of prosecution of the Action. AxisPoint will not oppose a total Class Representative Service Payment of not more than $15,000. The Settlement Administrator will pay the Class Representative Service Payments approved by the Court out of the Total Settlement Amount. If the Court approves a Class Representative Service Payment of less than $7,500 for Janet Shaulis and $7,500 for Jewel Arlene Key, the remainder for each Plaintiff will be retained in the Net Settlement Amount. Tax deductions and withholdings will not be taken from the Class Representative Service Payments, and instead a Form 1099 will be issued to each Plaintiff with respect to this payment. Plaintiffs will provide a completed Form W-9 to the Settlement Administrator before the payment is made.

2.    **To Class Counsel:** Class Counsel will apply to the Court for a Class Counsel Fees and Expenses Payment from the Total Settlement Amount of not more than $213,333.33, representing not more than $198,333.33 for attorneys' fees (33 1/3% of the Total Settlement Amount of $595,000) and not more than $15,000 for their actual documented litigation expenses. If the Court approves a Class Counsel Fees and Expenses Payment of less than the amount authorized under this Agreement, the remainder will be retained in the Net Settlement Amount. The Settlement Administrator will pay to Sommers Schwartz, P.C., the awarded Class Counsel Fees and Expenses Payment. Sommers Schwartz, P.C., will provide a completed Form W-9 to the Settlement Administrator before the payment is made. The Settlement Administrator will issue to Sommers Schwartz, P.C., a Form 1099 with respect to the awarded Class Counsel Fees and Expenses Payment.

3.    **To the Settlement Administrator.**  The Settlement Administrator will pay to itself out of the Total Settlement Amount its reasonable fees and expenses in an amount not to exceed $23,000 and under the terms approved by the Court and counsel for the Parties when it makes the Class Counsel Fees and Expenses Payment to Class Counsel.

E.    **Appointment of Settlement Administrator.**  Plaintiffs will ask the Court to appoint a Settlement Administrator, mutually acceptable to the Parties, which, as a condition of appointment, will agree to be bound by this Agreement with respect to the performance of its duties and its compensation. The Settlement Administrator's duties will include preparing, printing, and mailing the Class Notice Packet to the Class Members; conducting a National Change of Address search and using Accurint or other reasonable and cost-effective skip trace methods to locate any individual whose Class Notice Packet was returned by the U.S. Postal Service as non-deliverable, and re-mailing the Class Notice Packet to that individual's new address; receiving Class Member Elections Not to Participate in Settlement; providing the Parties with weekly status reports about the delivery of Class Notice Packets and receipt of Class Member Elections Not to Participate in Settlement; calculating all Settlement Shares; issuing the checks to effectuate the payments due under the Settlement; calculating the Class Members' share of payroll taxes, AxisPoint's share of payroll taxes on the Wage Portion, remitting such payroll taxes to the proper authorities and providing AxisPoint with the appropriate reports and documentation or same, and otherwise administering the Settlement pursuant to this Agreement. The Settlement Administrator will have the final authority to resolve all disputes concerning the calculation of a Participating Class Member's Settlement Share, subject to the dollar limitations and methodology set forth in this Agreement.  The Settlement Administrator's reasonable fees and expenses, including the cost of printing and mailing the Class Notice Packet, will be paid out of the Total Settlement Amount as approved by the Court.

F.    **Procedure for Approving Settlement.**

1.    **Motion for Preliminary Approval.**

a.    By May 24, 2018, the parties will jointly file a motion (the "Motion for Preliminary Approval") with the Court, noticed for hearing on June 28, 2018, or the first date thereafter available for the Court and the Parties, for an order granting Preliminary Approval of the Settlement, conditionally certifying the Class, setting a date for the Final Approval Hearing (for which the Parties will request October 4, 2018), and approving the Class Member Notice, the Class Member Settlement Information Sheet, and the form of Election Not to Participate in Settlement.

b.    Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), within ten (10) days after the Parties file the Motion for Preliminary Approval, AxisPoint will mail the CAFA Notice to the Attorney

General of the United States and the appropriate state official in each state in which a Class Member resides at the time of notice. The Parties intend and believe that the CAFA Notice pursuant to the procedures described in this section complies with the requirements of CAFA; and will request the Court to adjudicate the validity of the CAFA Notice in the motion for final approval of the Settlement and bar any claim to void or avoid the Settlement under CAFA.

c.    At the hearing on the Motion for Preliminary Approval, the Parties will jointly appear and support the granting of preliminary approval of the Settlement as provided by this Agreement.

d.    Should the Court decline to preliminarily approve all material aspects of the Settlement, or require for preliminary approval material changes to the Settlement to which the Parties do not agree, the Settlement will be null and void and the Parties will have no further obligations under it.

2.    **Notice to Class Members.**  After the Court enters its order granting Preliminary Approval of the Settlement, all Class Members will be provided with the Class Notice Packet, which will include the Class Member Notice completed to reflect the order granting Preliminary Approval of the Settlement, the Class Member Settlement Information Sheet completed to show the Class Member's information, and the form of Election Not to Participate in Settlement, as follows:

a.    Within fifteen (15) days after the Court enters its order granting Preliminary Approval of the Settlement, AxisPoint will provide to the Settlement Administrator with data, in electronic format if available, showing each Class Member's names, last known addresses, employee identification number, Social Security number, dates of employment at AxisPoint as a THN, and data for the Settlement Administrator to use to determine the number of Work Hours for each such Class Member. The Parties acknowledge and understand that AxisPoint does not have timekeeping data showing the hours worked for the entire Class Period and is expected to provide only the data to which it has reasonable access, with the understanding that it generally has such data from late 2015 forward (AxisPoint will provide dates of employment for Class Members prior to the date it maintains timekeeping data so that the Settlement Administrator can estimate each Class Member's corresponding Work Weeks and Work Hours for any time period in which AxisPoint cannot access timekeeping data). AxisPoint will provide to Class Counsel the names of the Class Members. If any of the Class Members' Data is unavailable to AxisPoint, AxisPoint will use its best efforts to deduce or reconstruct the missing data prior to when the data must be submitted to the Settlement Administrator.

The Settlement Administrator and Class Counsel will use the Class Members' Data to carry out the efforts described in section III.F.2, and otherwise will keep the Class Members' Data confidential except to the extent the Settlement provides for disclosure, AxisPoint consents in writing to disclosure, or the Court orders disclosure. Class Counsel will not use the Class Members' Data for the purposes of soliciting new claims against AxisPoint.

b.    Within fifteen (15) calendar days after receiving the Class Members' Data, the Settlement Administrator will mail the Class Notice Packets to all identified Class Members, using the mailing address information provided by AxisPoint, unless modified by any updated address information that the Settlement Administrator obtains in the course of administration of the Settlement.

c.    If a Class Notice Packet is returned because of an incorrect address, the Settlement Administrator will promptly, and not later than five (5) calendar days from receipt of the returned packet, search for a more current address for the Class Member using Accurint or another other reasonable and cost-effective skip trace method, and re-mail the Class Notice Packet to the Class Member. The Settlement Administrator will use the Class Members' Data and otherwise work with AxisPoint and Plaintiffs to find a more current address. The Settlement Administrator will be responsible for taking reasonable steps, consistent with its agreed-upon job parameters, court orders, and fee, to trace the mailing address of any Class Member for whom a Class Notice Packet is returned by the U.S. Postal Service as undeliverable. These reasonable steps will include, at a minimum, the tracking of all undelivered mail; performing address searches for all mail returned without a forwarding address; and promptly re-mailing to persons for whom new addresses are found. If the Class Notice Packet is re-mailed, the Settlement Administrator will note for its own records and notify Class Counsel and AxisPoint's Counsel of the date and address of each such re-mailing as part of a weekly status report provided to the Parties. Class Counsel and AxisPoint's Counsel will be entitled to receive from the Settlement Administrator any updated address information about a Class Member as the Settlement Administrator obtains such information.

d.    Each week, the Settlement Administrator will provide to Class Counsel and AxisPoint's Counsel a report showing whether any Class Notice Packets have been returned and re-mailed and the receipt of any Election Not to Participate in Settlement. This report also will include any updated address information for any Class Member.

e.    Not later than thirty-five (35) calendar days prior to the Final Approval Hearing, the Settlement Administrator will provide the Parties with a declaration of due diligence setting forth its compliance with its obligations under this Agreement, which Plaintiffs will file with the Court along with the Motion for Final Approval.  Prior to the Final Approval Hearing, the Settlement Administrator will provide the Parties with a supplemented declaration of due diligence if any material changes occur from the date of the filing of its prior declaration, and Plaintiffs promptly will file the supplemented declaration with the Court.

3.    **Objections to Settlement; Opt-outs from Settlement.**  Class Members may submit objections to the Settlement or elect not to participate in the Settlement pursuant to the following procedures:

a.    **Objections to Settlement.**  Class Members who wish to object to any term of the Settlement must file with the Court not later than forty-five (45) calendar days after the Settlement Administrator mails the Class Notice Packet a written objection setting forth the grounds for the objection.  Class Members who wish to object to the request for the Class Representative Service Payments or the Class Counsel Fees and Expenses Payment must file with the Court not later than seven (&) calendar days before the Final Approval Hearing a written objection setting forth the grounds for the objection.  The objection also must indicate whether the Class Member intends to appear at the Final Approval Hearing; the failure to so indicate will constitute a waiver of the right to appear at the hearing.  Class Members who do not file written objections in the manner and by the deadlines specified above will be deemed to have waived any objections and will be foreclosed from making any objections (whether by appeal or otherwise) to the Settlement or other related matters.  Class Counsel and AxisPoint's Counsel will file their responses to any objection to the Settlement within eleven (11) calendar days of the objection deadline. Class Counsel and AxisPoint's Counsel will file their responses to any objection to the request for the Class Representative Service Payments or the Class Counsel Fees and Expenses Payment within three (3) calendar days before the Final Approval Hearing.  An order changing the deadline or procedure for Class Members to file objections to the Settlement will not constitute a material change.

b.    **Elections Not to Participate in Settlement.**  Class Members requesting exclusion from the Class must mail to the Settlement Administrator a signed Election Not to Participate in Settlement postmarked no later than forty-five (45) calendar days after the Settlement Administrator mails the Class Notice Packet.  The Election Not to Participate in Settlement must contain the name,

11

address, telephone number, last four digits of the Class Member's social security number, date, and signature of the Class Member to be valid. If a question is raised about the authenticity of an Election Not to Participate in Settlement, the Settlement Administrator will have the right to require additional proof of the Class Member's identity. A Class Member who submits a timely Election Not to Participate in Settlement will not be a Participating Class Member and will not participate in or be bound by the Settlement and the Judgment and will not receive a Settlement Share, but will retain the right, if any, he or she may have to pursue an individual claim against AxisPoint that otherwise would be barred by the Settlement. A Class Member who does not complete and mail a timely Election Not to Participate in Settlement in the manner and by the deadline specified above automatically will be a Participating Class Member and will be bound by all terms and conditions of the Settlement, if the Settlement is approved by the Court, and by the Judgment, regardless of whether he or she has objected to the Settlement. An order changing the deadline or procedure for Class Members to submit an Election Not to Participate in Settlement will not constitute a material change of this Agreement.

c.    **Report.** Not later than fourteen (14) days after the deadline for submission of objections to the Settlement and Elections Not to Participate in Settlement, the Settlement Administrator will provide the Parties with (1) a complete and accurate list that separately identifies all Participating Class Members and non-participating Class Members, the number of Work Hours and the Settlement Share amount associated with each Participating Class Member as calculated in section III.C.1. of this Agreement, and the total amount of Work Hours for all Participating Class Members as calculated in section III.C.1. of this Agreement; (2) copies of all objections and Elections Not to Participate in Settlement received by the Settlement Administrator; and (3) an indication of when each objection and Election Not to Participate in Settlement was received by the Settlement Administrator.

4.    **Resolution of Disputes.** If a Class Member disputes the information shown on his or her Class Member Settlement Information Sheet, the Class Member must ask the Settlement Administrator to resolve the matter by returning the sheet with the information that he or she contends is incorrect and including with the sheet any documentation the Class Member has to support his or her contention. In the event of such a dispute, AxisPoint will have the right to review its payroll, timekeeping, and personnel records to verify the correct information. Unless AxisPoint agrees with the correction, AxisPoint will provide to Class Counsel and the Settlement Administrator documentation supporting AxisPoint's position that the information shown in the Class Member Settlement Information Sheet is correct. After

consultation with Class Counsel, the Class Member, and AxisPoint, the Settlement Administrator will make a determination of the correct information, and that determination will be final, binding on the Parties and the Class Member, and non-appealable.

5. **No Solicitation of Objection, Appeal, or Election Not to Participate in Settlement.** Neither the Parties nor their respective counsel will solicit or otherwise encourage directly or indirectly any Class Member to object to the Settlement, appeal from the Judgment, or submit an Election Not to Participate in Settlement.

6. **Right of AxisPoint to Reject Settlement.** If five percent (5%) or more of Class Members, or a number of Class Members whose Settlement Shares would represent five percent 5% or more of the Settlement Amount, submit valid and timely Elections Not to Participate in Settlement, AxisPoint will have the right, but not the obligation, to void the Settlement and the Parties will have no further obligations under the Settlement, including any obligation by AxisPoint to pay the Total Settlement Amount, or any amounts that otherwise would have been owed under this Agreement, except that AxisPoint will pay the Settlement Administrator's reasonable fees and expenses incurred as of the date that AxisPoint exercises its right to void the Settlement.

7. **Additional Briefing and Final Approval.**

   a. Not later than fourteen (14) days before the Final Approval Hearing, the Parties jointly will file with the Court a motion for final approval of the Settlement, and payment of the Settlement Administrator's reasonable fees and expenses ("Motion for Final Approval").

   b. Not later than fourteen (14) days before the Final Approval Hearing, Plaintiffs and Class Counsel will serve on AxisPoint and file with the Court a motion for awards of the Class Representative Service Payments and the Class Counsel Fees and Expenses Payment pursuant to this Agreement.

   c. If any opposition to the Motion for Final Approval is filed, then not later than three (3) days before the Final Approval Hearing, the Parties may file replies in support of the Motion for Final Approval of the Settlement, and payment of the Settlement Administrator's reasonable fees and expenses; and Plaintiffs and Class Counsel may file a reply in support of their motion for the Class Representative Service Payment and the Class Counsel Fees and Expenses Payment.

    d.    At the hearing on the Motion for Final Approval, the Parties will jointly appear and support the granting of final approval of the Settlement as provided by this Agreement.

    e.    If the Court does not grant final approval of the Settlement or grants final approval conditioned on any material change to the Settlement to which the Parties do not agree, then either Party will have the right to void the Settlement; if that occurs, the Parties will have no further obligations under the Settlement, including any obligation by AxisPoint to pay the Total Settlement Amount, except that AxisPoint will pay the Settlement Administrator's reasonable fees and expenses incurred as of the date that the Party exercises the right to void the Settlement under this paragraph.  However, an award by the Court of a lesser amount than that sought by Plaintiffs and Class Counsel for the Class Representative Service Payments, or the Class Counsel Fees and Expenses Payment, will not constitute a material change to the Settlement within the meaning of this paragraph.

    f.    After entry of the Judgment, the Court will have continuing jurisdiction over the Action and the Settlement solely for purposes of (1) enforcing this Agreement, including enforcing AxisPoint's obligation to pay the Total Settlement Amount; (2) addressing settlement administration matters; and (3) addressing such post-judgment matters as may be appropriate under court rules or applicable law.

8.    **Waiver of Right to Appeal.**  Provided that the Judgment is consistent with the material terms of this Agreement, Plaintiffs and Participating Class Members and their counsel hereby waive any and all rights to appeal from the Judgment, including all rights to any post-judgment proceeding and appellate proceeding, such as a motion to vacate judgment, a motion for new trial, and any extraordinary writ, and the Judgment therefore will become non-appealable at the time it is entered.  This waiver of appeal does not include any waiver of the right to oppose any appeal, appellate proceedings or post-judgment proceedings.  This waiver of appeal also does not preclude Plaintiffs or Class Counsel from appealing from a refusal by the Court to award the full Class Representative Service Payments or the Class Counsel Fees and Expenses Payments sought by them.  If an appeal is taken from the Judgment, the time for consummating the Settlement (including making payments under the Settlement) will be suspended until such time as their appeal is finally resolved and the Judgment becomes Final, as defined in this Agreement.

9.    **Vacating, Reversal, or Material Modification of Judgment on Appeal or Review.**  If, after a notice of appeal or a petition for *certiorari* or review, or any other motion, petition, or application, the reviewing court vacates, reverses, or modifies the Judgment such that there is a material change to

the Settlement, and that court's decision is not completely reversed and the Judgment is not fully affirmed on review by a higher court, then either Plaintiffs or AxisPoint will have the right to void the Settlement, which the Party must do by giving written notice to the other Parties, the reviewing court, and the Court not later than fifteen (15) calendar days after the reviewing court's decision vacating, reversing, or materially modifying the Judgment becomes Final. A vacation, reversal, or modification of the Court's award of the Class Representative Service Payment or the Class Counsel Fees and Expenses Payments will not constitute a vacating, reversal, or material modification of the Judgment within the meaning of this paragraph.

10.    **Timing of Settlement Payments.** Within seven (7) calendar days after the Settlement becomes Final, as defined in this Agreement, AxisPoint will transfer to the Settlement Administrator the Total Settlement Amount via wire transfer along with the employer's portion of payroll taxes. Within seven (7) calendar days thereafter, the Settlement Administrator will pay to Participating Class Members their respective Settlement Shares and California Claims Payments; to Plaintiffs, the Class Representative Service Payments; to Class Counsel, the Class Counsel Fees and Expenses Payment; and to the Settlement Administrator, its reasonable fees and expenses as approved by the Court. The Settlement Administrator shall be responsible for paying the employer and employee payroll tax withholdings to the applicable authorities with the necessary reports, submitting copies to AxisPoint's counsel.

11.    **Uncashed Settlement Share Checks.** A Participating Class Member must cash his or her Settlement Share check within 180 calendar days after the check is initially mailed to him or her. If a check is returned to the Settlement Administrator, the Settlement Administrator will make all reasonable efforts to re-mail it to the Participating Class Member at his or her correct address. If any Participating Class Member's check is not cashed within 120 calendar days after its initial mailing to the Participating Class Member, the Settlement Administrator will send the Participating Class Member a letter or postcard informing him or her that unless the check is cashed in the next sixty (60) calendar days, it will expire and become non-negotiable, and offer to replace the check if it was lost or misplaced but not cashed. If a Participating Member fails to timely cash the check for his or her Settlement Share the proceeds represented by the check will be deemed null and void and the proceeds will be paid back to AxisPoint. In such an event, the Settlement Administrator will not issue a Form 1099 and/or Form W-2 to the Participating Class Member, or will withdraw a Form 1099 and/or Form W-2 already issued to the Participating Class Member, but the Participating Class Member nevertheless will remain bound by the Settlement with respect to all claims except those arising under the federal Fair Labor Standards Act, 29 U.S.C. section 201 *et seq.*, ("FLSA"). All payments provided to a Participating Class Member will be distributed with

a notice, which will detail the Participating Class Member's right to participate in the FLSA portion of the settlement.  The notice shall provide that if the Participating Class Member refrains from depositing his or her settlement check, the Participating Class Member will retain his or her right to pursue a claim under the FLSA individually, but will nevertheless remain bound by the Settlement with respect to all other respects.

G.    **Release and Waiver of Claims.**

1.    **Plaintiffs**.  In consideration of their awarded Class Representative Service Payments, Settlement Shares, and the other terms and conditions of the Settlement, as of the date the Settlement becomes Final, Plaintiffs release any and all known and unknown claims against AxisPoint and its parents, predecessors, successors, subsidiaries, affiliates, trustees, directors, officers, fiduciaries employees, agents, attorneys, and other related persons and entities, and any and all of their assigns, including specifically Care Management Holdings LLC, and HGS Population Health, LLC (the "Released AxisPoint Parties"), whether raised in the Action or not.  Those claims include, but are not necessarily limited to, claims that are based on the factual allegations made in the Action or otherwise based on or related to the allegations that, from February 6, 2015 (for Plaintiff Janet Shaulis) and from February 6, 2014 (for Plaintiff Jewel Arlene Key), through the date the Settlement becomes Final, the Released AxisPoint Parties failed to pay overtime wages, failed to pay minimum wages, made unlawful deductions, failed to provide lawful meal periods, failed to maintain accurate records of hours worked and wages paid; and failed to provide accurate wage statements.  Such claims include, but are not necessarily limited to:

a.    With respect to Plaintiff Janet Shaulis, all claims for unpaid wages, minimum wages, or overtime compensation under 29 U.S.C. section 201 *et seq.* of the FLSA; claims for unpaid wages, minimum wages, or overtime compensation under Nebraska state law; common law claims for unjust enrichment; and any associated claim for interest, attorneys' fees, or costs ("Plaintiff Shaulis' Released Claims").

b.    With respect to Plaintiff Jewel Arlene Key, all claims for unpaid wages, minimum wages, or overtime compensation under 29 U.S.C. section 201 *et seq.* of the FLSA;  claims for overtime and double-time wages under California Labor Code section 510; claims for minimum wages under California Labor Code sections 1194, 1197, 1197.1, and 1198; claims for waiting-time penalties under California Labor Code section 203; claims for unlawful deductions under California Labor Code sections 221 and 223; claims for meal-period premiums under California Labor Code sections 226.7 and 512; claims for failure to provide accurate wage statements claims under California Labor section 226; claims for failure to maintain accurate

records of hours worked and wages paid under California Labor Code section 1174; claims of unfair competition under California Business and Professions Code section 17200 *et seq.*; common law claims for unjust enrichment; and any associated claim for interest, attorneys' fees, or costs ("Plaintiff Key's Released Claims").

2. **Participating Class Members.** In consideration for his or her awarded Settlement Share, as of the date the Settlement becomes Final, every Class Member who does not complete and mail a valid and timely Election Not to Participate in Settlement releases any and all known and unknown claims against the Released AxisPoint Parties, whether raised in the Action or not, that are based on the factual allegations made in the Action, could have been raised in the Action, or otherwise based on or related to the allegations that, from February 6, 2015, through the date the Settlement becomes Final, the Released AxisPoint Parties failed to pay overtime wages, failed to pay minimum wages, failed to provide lawful meal periods, and failed to comply with state wage and hour laws. Such claims include, but are not necessarily limited to, all claims for unpaid wages, minimum wages, or overtime compensation under 29 U.S.C. section 201 *et seq.* of the FLSA; claims for unpaid wages, minimum wages, or overtime compensation under applicable state law for the states where the Class Member resided while employed by AxisPoint; common law claims for unjust enrichment; and any associated claim for interest, attorneys' fees, or costs ("Class Members' Released Claims").

3. **Class Counsel.** In consideration of their awarded Class Counsel Fees and Expenses Payment, Class Counsel and any counsel associated with Participating Class Members hereby fully and finally release the Released AxisPoint Parties of any and all claims to any attorneys' fees and expenses in connection with the Action other than what is provided by the Agreement (the "Class Counsel's Released Claims").

4. **Waiver of Rights under California Civil Code Section 1542.** Plaintiff Jewel Arlene Key and opt-in Plaintiff Nancy Schwab-Ketner have agreed to release all claims described above, as well as all claims, whether known or unknown, under federal, state or local law, ordinance or regulation from February 6, 2014 through the date the Settlement becomes Final regardless of type and regardless of whether or not related to the Action. Thus, even if Plaintiff Jewel Arlene Key or opt-in Plaintiff Nancy Schwab-Ketner discovers facts in addition to or different from those that they now know or believe to be true with respect to their respective Plaintiffs' Released Claims or Class Members' Released Claims, those claims will remain released and forever barred, as well as every other potential claim, demand, right, liability and cause of action of any type, tot the extent such a release is not prohibited by law. Plaintiff Jewel Arlene Key and opt-in Plaintiff Nancy Schwab-Ketner expressly waive and relinquish the provisions, rights and benefits of section 1542 of the California Civil Code, which reads:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

H.    **No Effect on Other Benefits.**    The Settlement Shares will not result in any additional benefit payments (such as 401(k) or bonus) beyond those provided by this Agreement to Plaintiffs and Participating Class Members, and Plaintiffs and Participating Class Members will be deemed to have waived all such claims, whether known or unknown by them, as part of their release of claims under this Agreement.

I.    **Miscellaneous Terms.**

1.    **No Admission of Liability or Class Certification for Other Purposes.**

a.    AxisPoint denies that it has engaged in any unlawful activity, has failed to comply with the law in any respect, has any liability to anyone under the claims asserted in the Action, or that but for the Settlement a class should be certified in the Action. This Agreement is entered into solely for the purpose of compromising highly disputed claims. Nothing in this Agreement is intended or will be construed as an admission of liability or wrongdoing by AxisPoint, or an admission by Plaintiffs that any of their claims were non-meritorious or any defense asserted by AxisPoint was meritorious. This Settlement and the fact that Plaintiffs and AxisPoint were willing to settle the Action will have no bearing on, and will not be admissible in connection with, any litigation (other than solely in connection with the Settlement).

b.    The Parties have agreed to certification of the Class for the sole purpose of effectuating this Settlement. Should the Settlement be voided pursuant to this Agreement, or not approved by the Court, or should the Judgment not become Final, the certification of the Class pursuant to this Agreement will be deemed null and void; and the fact that the Parties agreed to certification of the Class will have no bearing on, and will not be admissible in connection with, the issue of whether a class should be certified in a non-settlement context in the Action or any other action.

c.    Whether or not the Judgment becomes Final, nothing in the Settlement, this Agreement, any document, statement, proceeding or conduct related to the Settlement or the Agreement, or any reports or accounting of those matters, will be (i) construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to AxisPoint or any other of the Released

AxisPoint Parties, including, but not limited to, evidence of a presumption, concession, indication or admission by any of the Released AxisPoint Parties of any liability, fault, wrongdoing, omission, concession or damage; or (ii) disclosed, referred to or offered in evidence against any of the Released AxisPoint Parties, in any further proceeding in the Action, or any other civil, criminal or administrative action or proceeding, except that any and all provisions of this Agreement may be admitted in evidence and otherwise used in any and all proceedings to enforce any or all terms of this Agreement, or in defense of any claims released or barred by this Agreement.

2.    **Integrated Agreement.**  After this Agreement is signed and delivered by all Parties and their counsel, this Agreement and its exhibits will constitute the entire agreement between the Parties relating to the Settlement, and it will then be deemed that no oral representations, warranties, covenants, or inducements have been made to any Party concerning this Agreement or its exhibits other than the representations, warranties, covenants, and inducements expressly stated in this Agreement and its exhibits.

3.    **Attorney Authorization.**  Class Counsel and AxisPoint's Counsel warrant and represent that they are authorized by Plaintiffs and AxisPoint, respectively, to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement.  The Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement.  In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Agreement, or on any supplemental provisions that may become necessary to effectuate the terms of this Agreement, the Parties will seek the assistance of the Court, and in all cases all such documents, supplemental provisions and assistance of the court will be consistent with this Agreement.

4.    **Modification of Agreement.**  This Agreement, and any and all parts of it, may be amended, modified, changed, or waived only by an express written instrument signed by all Parties or their successors-in-interest.

5.    **Agreement Binding on Successors.**  This Agreement will be binding upon, and inure to the benefit of, the successors of each of the Parties.

6.    **Applicable Law.**  All terms and conditions of this Agreement and its exhibits will be governed by and interpreted according to the laws of the State of Colorado, without giving effect to any conflict of law principles or choice of law principles.

7.     **Cooperation in Drafting.**  The Parties have cooperated in the drafting and preparation of this Agreement.  This Agreement will not be construed against any Party on the basis that the Party was the drafter or participated in the drafting.

8.     **Fair Settlement.**  The Parties and their respective counsel believe and warrant that this Agreement reflects a fair, reasonable, and adequate settlement of the Action and have arrived at this Agreement through arms-length negotiations, taking into account all relevant factors, current and potential.

9.     **Headings.**  The descriptive heading of any section or paragraph of this Agreement is inserted for convenience of reference only and does not constitute a part of this Agreement.

10.    **Notice.**  All notices, demands or other communications given under this Agreement will be in writing and deemed to have been duly given as of the third business day after mailing by United States mail, addressed as follows:

*To Plaintiffs and the Class:*

Kevin J. Stoops
Jason J. Thompson
Sommers Schwartz, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone:  (248) 355-0300
Facsimile:  (248) 436-8453
kstoops@sommerspc.com
jthompson@sommerspc.com

*To AxisPoint:*

Chris C. Scheithauer
McDermott Will & Emery LLP
4 Park Plaza, Suite 1700
Irvine, California  92614
Telephone:  (949) 757-7163
Facsimile:  (949) 851-9348
cscheithauer@mwe.com

11. **Execution in Counterpart.** This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument provided that counsel for the Parties will exchange between themselves original signed counterparts. Facsimile or digital signatures will be accepted if the original signature is provided within seven calendar days upon request. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

## IV.    EXECUTION BY PARTIES AND COUNSEL

The Parties and their counsel hereby execute this Agreement.

Dated: May ___, 2018.                05/25/2018    JANET SHAULIS

_____

Dated: May ___, 2018.    JEWEL ARLENE KEY

_____

Dated: May ___, 2018.    NANCY SCHWAB-KETNER

_____

Dated: May ___, 2018.    FALCOLN SUBSIDIARY LLC d/b/a AXISPOINT HEALTH

By: _____
    Name:
    Its:

Dated: May ___, 2018.    KEVIN J. STOOPS

By: _____
    Kevin J. Stoops
    Attorney for Plaintiffs

Dated: May ___, 2018.    CHRIS C. SCHEITHAUER

By: _____
    Chris C. Scheithauer
    Attorneys for Defendant Falcon Subsidiary LLC
    d/b/a AxisPoint Health

21

11.    **Execution in Counterpart.**  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them will be deemed to be one and the same instrument provided that counsel for the Parties will exchange between themselves original signed counterparts.  Facsimile or digital signatures will be accepted if the original signature is provided within seven calendar days upon request.  Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

**IV.    EXECUTION BY PARTIES AND COUNSEL**

The Parties and their counsel hereby execute this Agreement.

Dated:  May ___, 2018.            JANET SHAULIS


                                  _____

Dated:  May 05/24/2018 ___, 2018.            JEWEL ARLENE KEY

                                  *J.A.Key* _____

Dated:  May ___, 2018.            NANCY SCHWAB-KETNER


                                  _____

Dated:  May ___, 2018.            FALCOLN  SUBSIDIARY  LLC  d/b/a  AXISPOINT HEALTH

                                  By: _____
                                      Name:
                                      Its:

Dated:  May ___, 2018.            KEVIN J. STOOPS


                                  By: _____
                                           Kevin J. Stoops
                                          Attorney for Plaintiffs

Dated:  May ___, 2018.            CHRIS C. SCHEITHAUER

                                  By: _____
                                          Chris C. Scheithauer
                                    Attorneys for Defendant Falcon Subsidiary LLC
                                          d/b/a AxisPoint Health

11.    **Execution in Counterpart.**  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them will be deemed to be one and the same instrument provided that counsel for the Parties will exchange between themselves original signed counterparts.  Facsimile or digital signatures will be accepted if the original signature is provided within seven calendar days upon request.  Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

## IV.    EXECUTION BY PARTIES AND COUNSEL

The Parties and their counsel hereby execute this Agreement.

Dated:  May ___, 2018.            JANET SHAULIS

_____

Dated:  May ___, 2018.            JEWEL ARLENE KEY

_____

Dated:  May 05/24/2018 ___, 2018.       NANCY SCHWAB-KETNER

_____

Dated:  May ___, 2018.            FALCOLN  SUBSIDIARY  LLC  d/b/a  AXISPOINT HEALTH

By: _____
      Name:
      Its:

Dated:  May 25 , 2018.            KEVIN J. STOOPS

By: _____
            Kevin J. Stoops
            Attorney for Plaintiffs

Dated:  May ___, 2018.            CHRIS C. SCHEITHAUER

By: _____
            Chris C. Scheithauer
      Attorneys for Defendant Falcon Subsidiary LLC
            d/b/a AxisPoint Health

21

Dated: May ___, 2018.          NANCY SCHWAB-KETNER

_____

Dated: May ___, 2018.          FALCOLN SUBSIDIARY LLC f/d/b/a AXISPOINT
                               HEALTH

                               By: _____
                                   Name: _____
                                   Its: _____

Dated: May ___, 2018.          KEVIN J. STOOPS

                               By: _____
                                        Kevin J. Stoops
                                      Attorney for Plaintiffs

Dated: May ___, 2018.          CHRIS C. SCHEITHAUER

                               By: _____
                                      Chris C. Scheithauer
                               Attorneys for Defendant Falcon Subsidiary LLC
                                     f/d/b/a AxisPoint Health

22

**<u>EXHIBIT A</u>**

**[CLASS MEMBER NOTICE]**

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT AND
## FINAL APPROVAL HEARING

To:       All current and former hourly Telehealth Nurses (a home-based nurse who field patient calls) employed by
          Falcon Subsidiary LLC d/b/a AxisPoint Health ("AxisPoint"), during the period from February 6, 2014
          (Telehealth Nurses employed in California) and February 6, 2015 (Telehealth Nurses employed in states
          other than California), to [date of preliminary approval] (the "Class Period"), and excluding those individuals
          who already have resolved the claims asserted in this Action, whether by settlement or adjudication.

### PLEASE READ THIS NOTICE CAREFULLY

IT MAY AFFECT YOUR LEGAL RIGHTS TO MONEY YOU MAY BE OWED IN CONNECTION WITH YOUR
EMPLOYMENT BY AXISPOINT.  IF YOU DO NOT WANT TO PARTICIPATE IN THE SETTLEMENT, YOU
MUST RETURN YOUR COMPLETED ELECTION NOT TO PARTICIPATE IN SETTLEMENT, DATED,
SIGNED, AND POSTMARKED BY NOT LATER THAN [45 DAYS AFTER SA MAILS PACKET], OR ELSE
YOU WILL BE BOUND BY THE SETTLEMENT.

IF YOU WISH TO RECEIVE A SHARE OF THE SETTLEMENT PROCEEDS, READ THE ENCLOSED CLASS
MEMBER SETTLEMENT INFORMATION SHEET AND CONFIRM THAT YOUR IDENTIFYING
INFORMATION AND THE INFORMATION ABOUT YOUR EMPLOYMENT WITH TPMG IS CORRECT.  IF
IT IS CORRECT, YOU DO NOT NEED TO DO ANYTHING, AND YOU WILL RECEIVE YOUR SHARE OF
THE SETTLEMENT AT A LATER DATE IF THE COURT GRANTS FINAL APPROVAL OF THE
SETTLEMENT. IF THE CLASS MEMBER SETTLEMENT INFORMATION SHEET IS INCORRECT, RETURN
IT TO THE SETTLEMENT ADMINISTRATOR IN ACCORDANCE WITH THE INSTRUCTIONS IN THIS
NOTICE.

IF YOU WISH TO OBJECT TO THE SETTLEMENT, YOU MUST FOLLOW THE DIRECTIONS IN THIS
NOTICE.

PURSUANT TO THE ORDER OF THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLORADO (THE
"COURT"), ENTERED ON [DATE OF PRELIMINARY APPROVAL], YOU ARE HEREBY NOTIFIED AS
FOLLOWS:

## WHAT IS THIS NOTICE ABOUT?

A proposed settlement (the "Settlement") has been reached between Janet Shaulis and Jewel Arlene Key, the named
plaintiffs, and defendant Falcon Subsidiary LLC d/b/a AxisPoint Health ("AxisPoint"), in the class action pending in
the Court (the "Action") brought on behalf of the following individuals (the "Class"):

          All current and former hourly Telehealth Nurses (a home-based nurse who field patient calls)
          employed by Axis Point who, during the period from February 6, 2014 (Telehealth Nurses employed
          in California) and February 6, 2015 (Telehealth Nurses employed in states other than California) to
          [date of preliminary approval] (the "Class Period"), and excluding those individuals who already have
          resolved the claims asserted in this Action, whether by settlement or adjudication.

The Court has preliminarily approved the Settlement and conditionally certified the Class for purposes of the
Settlement only.  You have received this notice because AxisPoint records indicate that you are a member of the Class.
This notice is designed to inform you of how you can object to the Settlement, elect not to participate in the Settlement,
or provide corrected information to the Settlement Administrator.  Unless you submit an election not to participate in
the Settlement, the Settlement if finally approved by the Court will be binding upon you.

## WHAT IS THIS LAWSUIT ABOUT?

The Action, which is currently pending in the U.S. District Court for the District of Colorado (the "Court"), is titled "*Janet Shaulis and Jewel Arlene Key, individually and on behalf of all other similarly situated individuals, Plaintiffs v. Falcon Subsidiary LLC d/b/a AxisPoint Health, a Delaware limited liability company, Defendant,*" No. 1:18-cv-00293-CMA.

In the Action, Plaintiffs allege that Telehealth Nurses were not paid for all of their work time, were not provided with compliant meal and rest periods, and were not provided with compliant wage statements. Based on those allegations, Plaintiffs assert claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the California Labor Code, Cal. Lab. Code §§ 221, 223, 226, 226.7, 510, 512, 1174, 1194, 1197, 1197.1 1198, and 2698. Plaintiffs seek the recovery of wages, overtime wages, liquidated damages, interest, penalties, costs, attorneys' fees, and other relief. Plaintiffs sue on behalf of themselves and all other individuals allegedly similarly situated to her with respect to the claims asserted.

AxisPoint denies all of Plaintiffs' material allegations. Specifically, AxisPoint contends, among other things, that Telehealth Nurses were paid properly for all of their work time, were provided with their meal and rest periods, and were provided with compliant wage statements; that Plaintiffs cannot recover under the claims they have asserted; that AxisPoint acted in good faith with respect to the matters that Plaintiffs allege; that a class could not be appropriately certified in the Action; and if a class were certified, AxisPoint's defenses to Plaintiffs' claims would be applicable to the claims of the class.

After good-faith negotiations presided over by a private mediator, in which both sides recognized the substantial risk of an uncertain outcome, Plaintiffs and AxisPoint agreed to settle the Action pursuant to the terms and conditions of the Settlement.

The Settlement represents a compromise and settlement of highly disputed claims. Nothing in the Settlement is intended or will be construed as an admission by AxisPoint that Plaintiffs' claims in the Action have merit or that it has any liability to Plaintiffs or the proposed class on those claims. On the contrary, AxisPoint denies any and all such liability.

The parties and their counsel have concluded that the Settlement is advantageous, considering the risks and uncertainties to each side of continued litigation. The parties and their counsel have determined that the Settlement is fair, reasonable, and adequate and is in the best interests of the members of the Class.

# SUMMARY OF THE SETTLEMENT

To see if you will get money from this settlement, you first have to decide if you are a Class Member.

## WHO IS INCLUDED IN THE SETTLEMENT?

You are included in the Settlement if you fall within the following definition:

> All current and former hourly Telehealth Nurses (a home-based nurse who field patient calls) employed by Axis Point who, during the period from February 6, 2014 (Telehealth Nurses employed in California) and February 6, 2015 (Telehealth Nurses employed in states other than California) to [date of preliminary approval] (the "Class Period"), and excluding those individuals who already have resolved the claims asserted in this Action, whether by settlement or adjudication.

## WHAT WILL I RECEIVE FROM THE SETTLEMENT?

1.      AxisPoint will pay $595,000 as the Total Settlement Amount. The Total Settlement Amount will fund all payments to be made under the Settlement.

2.  Out of the Total Settlement Amount, AxisPoint will pay to each Class Member who does not submit a valid and timely Election Not to Participate in Settlement (a "Participating Class Member") a Settlement Share that is calculated as follows:

    a.  Each Participating Class Member will be credited with the total number of hours recorded by that Class Member as an hourly Telehealth Nurse during the Class Period (the Participating Class Member's "Work Hours").

    b.  For every week during this period on which the Participating Class Member worked at least forty (40) hours, the Participating Class Member's Work Hours will be multiplied by a factor of 1.5.

    c.  The Participating Class Member's Work Hours will be adjusted by a factor that is equal to the ratio of the Participating Class Member's most recent hourly base rate of pay (including applicable shift differential) ("hourly base rate of pay") as a Telehealth Nurse during the Class Period compared to the average most recent hourly base rate of pay of all Participating Class Members during the Class Period.

    d.  The Participating Class Member's Work Hours (adjusted as above where applicable) will be divided by the total Work Hours for all Participating Class Members (also adjusted as above where applicable).

    e.  The ratio yielded by the division done in section 2.d above will be multiplied by the Net Settlement Amount to yield the Participating Class Member's Settlement Share

3.  Out of the Total Settlement Amount, AxisPoint will pay to Judy Gallo, Cynthia Macias, Nila Fletcher, Jewel Arlene Key and Nancy Schwab-Ketner, in recognition of their claims arising under California state law: Judy Gallo -- $3,000; Cynthia Macias: $3,000; Nila Fletcher -- $2,000; Jewel Arlene Key -- $2,000; Nancy Schwab-Ketner -- $2,000 (the "California Claims Payments").

4.  The "Net Settlement Amount" means the Total Settlement Amount less the California Claims Payments, the Class Representative Payments, the Class Counsel Fees and Expenses Payment, the Settlement Administrator's reasonable fees and expenses, and any other fees or expenses (other than attorneys' fees and expenses) incurred in implementing the terms of this Settlement as approved by the Court. If the Court awards less than the amount sought for any of these awards, the difference between the amount sought and the amount awarded will be retained as part of the Net Settlement Amount.

5.  Following the court-approved deductions from the Total Settlement Amount, the remaining Net Settlement Amount will be paid out entirely to all Participating Class Members pursuant to the formula set forth in paragraph 2 and its subsections above.

6.  The Settlement Share for a Participating Class Member will depend on the number of Work Hours the Participating Class Member worked for AxisPoint during the Class Period; the Participating Class Member's most recent hourly base rate of pay during the Class Period; and the amounts awarded by the Court for the payments to the California Claims Payments, the Plaintiffs, Class Counsel, and the Settlement Administrator. By way of example only, assume that a Participating Class Member worked 2,000 Work Hours for AxisPoint during the Class Period, all Class Members are Participating Class Members, and all payment amounts sought were awarded. Assume also that the Participating Class Member never worked more than forty (40) hours in one week and that the Participating Class Member's most recent hourly base rate of pay during the Class Period equals the average most recent hourly rate of pay of all Participating Class Members during the Class Period. The Participating Class Member's Settlement Share would be approximately $_____, calculated as follows:

Total Settlement Amount:                                    $595,000

Less:

| | |
|---|---|
| California Claims Payments: | ($12,000) |
| Class Representative Payments ($7,500 + $7,500): | ($15,000) |
| Class Counsel Fees and Expenses Payment: | ($213,333.33) |
| Settlement Administrator's Fee: | ($23,000) |
| Net Settlement Amount: | $331,666.67 |

Participating Class Member's 2,000 Work Hours ÷

Total of All Participating Class Members' \_\_\_\_ Work Hours:    \_\_\_\_%

Participating Class Member's Settlement Share (\_\_\_% x $\_\_\_):    $\_\_\_\_

An approximation of your Settlement Share based on these assumptions appears on your Class Member Settlement Information Sheet accompanying this notice. Your actual Settlement Share may be more or less once awarded.

7.     The Settlement Shares and other amounts awarded by the Court will be paid after final court approval of the Settlement, entry of the final judgment, and the exhaustion of all rights to appeal or review, or after any appeal or review has been resolved in favor of the Settlement.

8.     You will be included in the Settlement and receive your proportional share of the Settlement unless you complete and submit to the Settlement Administrator by the deadline of [45 days after SA mails packet], an Election Not to Participate in Settlement form that is provided with this notice and in accordance with the conditions for submitting that Election. If you do not complete and submit this form in accordance with the conditions for submitting that Election, you will be bound by this Settlement and receive a Settlement Share. If you do complete and submit by the deadline an Election Not to Participate in Settlement form in accordance with the conditions for submitting that Election, you will be excluded from the Settlement and will not receive a Settlement Share, but you will retain the right you may have, if any, to pursue a claim against AxisPoint.

9.     If five percent (5%) or more of Class Members, or a number of Class Members whose Settlement Shares would be worth five percent (5%) or more of the Net Settlement Amount if no Class Member elected not to participate in the Settlement, timely submit completed Elections Not to Participate in Settlement, AxisPoint will have the right, but not the obligation, to void the Settlement and the Parties will have no further obligations under the Settlement, including any obligation by AxisPoint to pay the Total Settlement Amount, or any amounts that otherwise would have been owed under this Settlement, except that AxisPoint will pay the Settlement Administrator's reasonable fees and expenses incurred as of the date that AxisPoint exercises its right to void the Settlement.

10.     If the Court does not grant final approval of the Settlement or grants final approval conditioned on any material change to the terms of the Settlement with respect to the payments to be made to Class Members or the scope of their release of claims, or the final judgment to be entered in the Action, then the Settlement will become null and void; if that occurs, neither Plaintiffs nor AxisPoint will have further obligations under the Settlement, including any obligation by AxisPoint to pay the Total Settlement Amount or any amounts that otherwise would have been owed under this Settlement. An award by the Court of a lesser amount than that sought by Plaintiffs and Class Counsel for the Class Representative Payments and the Class Counsel Fees and Expenses Payment will not constitute a material change to the Settlement.

11.     The Court has appointed Simpluris, Inc., to act as an independent Settlement Administrator and to resolve any dispute concerning the calculation of a Class Member's entitlement to a Settlement Share.

12.     If you dispute the accuracy of any of the information used to calculate your Settlement Share, shown on your enclosed Class Member Settlement Information Sheet, you must ask the Settlement Administrator to resolve the matter. In order to do so, you must return your Class Member Settlement Information Sheet to the Settlement Administrator by the deadline of [45 days after SA mails packet], informing the Settlement

Administrator of the fact of the dispute and the basis for your contention that different information is correct for you (including any documentary evidence that you have to support your contention). In the event of such a dispute, AxisPoint will manually review its payroll and personnel records to verify the correct information. AxisPoint's records will have a rebuttable presumption of correctness. After consultation with you, Class Counsel, and AxisPoint, the Settlement Administrator will make a determination of the correct information, and that determination will be final, binding on you and TPMG, and non-appealable.

13.    The Settlement includes a release, as of the date of the Judgment approving the Settlement, of AxisPoint, and its parents, predecessors, successors, subsidiaries, affiliates, trustees, directors, officers, fiduciaries employees, agents, attorneys, and other related persons and entities, and any and all of their assigns, including specifically Care Management Holdings LLC, and HGS Population Health, LLC (the "Released AxisPoint Parties"), any and all known and unknown claims against the Released AxisPoint Parties, whether raised in the Action or not, that are based on the factual allegations made in the Action, could have been raised in the Action, or otherwise based on or related to the allegations that, from February 6, 2015, through the date the Settlement becomes Final, the Released AxisPoint Parties failed to pay overtime wages, failed to pay minimum wages, failed to provide lawful meal periods, and failed to comply with state wage and hour laws. Such claims include, but are not necessarily limited to, all claims for unpaid wages, minimum wages, or overtime compensation under 29 U.S.C. section 201 *et seq.* of the FLSA; claims for unpaid wages, minimum wages, or overtime compensation under applicable state law for the states where the Class Member resided while employed by AxisPoint; common law claims for unjust enrichment; and any associated claim for interest, attorneys' fees, or costs ("Class Members' Released Claims").

14.    A Participating Class Member must cash his or her Settlement Share check within 180 calendar days after the check is initially mailed to him or her. If a check is returned to the Settlement Administrator, the Settlement Administrator will make all reasonable efforts to re-mail it to the Participating Class Member at his or her correct address. If any Participating Class Member's check is not cashed within 120 calendar days after its initial mailing to the Participating Class Member, the Settlement Administrator will send the Participating Class Member a letter or postcard informing him or her that unless the check is cashed in the next sixty (60) calendar days, it will expire and become non-negotiable, and offer to replace the check if it was lost or misplaced but not cashed. If a Participating Member fails to timely cash the check for his or her Settlement Share the proceeds represented by the check will be deemed null and void and the proceeds will be paid back to AxisPoint. In such an event, the Settlement Administrator will not issue a Form 1099 and/or Form W-2 to the Participating Class Member, or will withdraw a Form 1099 and/or Form W-2 already issued to the Participating Class Member, but the Participating Class Member nevertheless will remain bound by the Settlement with respect to all claims except those arising under the federal Fair Labor Standards Act, 29 U.S.C. section 201 *et seq.*, ("FLSA").

15.    **Class Representative Payment:** In addition to their Settlement Shares as Class Members, Plaintiffs will apply to the Court for Class Representative Service Payments from the Total Settlement Amount of not more than $7,500 for Janet Shaulis and $7,500 for Jewel Arlene Key, in consideration of their initiating and pursuing the Action, undertaking the risk of liability for attorneys' fees and expenses in the event she was unsuccessful in the prosecution of the Action, and granting the general release they are granting as part of the Settlement. These payments, which will be paid in addition to Plaintiffs' Settlement Shares, will be made out of the Total Settlement Amount.

16.    **Class Counsel Fees and Expenses Payment:** Class Counsel have represented and continue to represent the Class on a contingency-fee basis. That means that attorneys' fees are paid only if money is recovered for the Class. It is common to award attorneys' fees as a percentage of the settlement amount negotiated by the attorneys for the class. As part of the final approval hearing, Kevin J. Stoops and Jason J. Thompson of Sommers Schwartz, P.C. will request up to $213,333.33, representing $198,333.33 for their attorneys' fees (33 1/3% of the Total Settlement Amount) and up to $15,000 for their expenses incurred in connection with their work in this case. AxisPoint does not oppose this payment. This amount constitutes full and complete compensation for all legal fees, costs and expenses of all Class Counsel, including costs and expenses resulting from experts and other vendors retained by Class Counsel in connection with the litigation and all work done through the completion of the litigation, whatever date that may be. Class Members will not be required to pay Class Counsel for any other attorneys' fees, costs or expenses out of their own pockets if the

Settlement Agreement and the fee request are finally approved by the Court. Class Counsel's attorneys' fees and expenses as approved by the Court will be paid out of the Total Settlement Amount.

17.    **Costs of Administration:**  The reasonable costs of administering the Settlement, including the Settlement Administrator's fees and expenses, not to exceed $23,000, will be paid out of the Total Settlement Amount.

18.    **Plaintiffs and Class Counsel's Support of the Settlement:**  Plaintiffs as Class Representatives and Class Counsel support the Settlement. Their reasons include the risk of denial of class certification and a trial on the merits, the inherent delays and uncertainties associated with litigation, and the possibility that the Class is not entitled to any recovery. Based on their experience litigating similar cases, Class Counsel believe that further proceedings in this case, including a trial and probable appeals, would be very expensive and protracted. No one can confidently predict how the various legal questions at issue, including the amount of damages, would ultimately be resolved. Therefore, upon careful consideration of all of the facts and circumstances of this case, Class Counsel believe that the Settlement is fair, reasonable, and adequate.

## WHAT ARE MY RIGHTS AS A CLASS MEMBER?

1.    **Participating in the Settlement:**  Plaintiffs as Class Representatives and Class Counsel represent your interests as a Class Member. Unless you elect not to participate in the Settlement, you are a part of the Class, you will be bound by the terms of the Settlement and any final judgment that may be entered by the Court, and you will be deemed to have released the claims against AxisPoint and the other released parties described above. As a member of the Class, you will not be responsible for the payment of attorneys' fees or reimbursement of litigation expenses unless you retain your own counsel, in which event you will be responsible for your own attorneys' fees and expenses.

2.    **Objecting to the Settlement:**  You may object to the terms of the Settlement in writing before final approval or in person.

**MAIL YOUR OBJECTION TO:**

Jeffrey P. Colwell, Clerk of Court
Office of the Clerk
United States District Court, District of Colorado
901 19th Street
Denver, Colorado 80294

The Clerk of Court will file your objection in the Court's record. You may also file your objections in person at any location of the United States District Court for the District of Colorado

**DO NOT TELEPHONE THE COURT OR AXISPOINT'S COUNSEL.**

Any written objection must clearly identify the case name and number (*Janet Shaulis and Jewel Arlene Key, individually and on behalf of all other similarly situated individuals, Plaintiffs v. Falcon Subsidiary LLC d/b/a AxisPoint Health, a Delaware limited liability company, Defendant*," No. 1:18-cv-00293-CMA), and state your full name, address, date of birth, and the dates of your employment at AxisPoint. Written objections to the Settlement must be postmarked or filed on or before [45 days after SA mails packet]; written objections to the requests for the Class Representative Payments and the Class Counsel Fees and Expenses Payment must be mailed by not later than [21 calendar days before the final approval hearing].    The Court only requires substantial compliance with the requirements for submitting an objection. The failure to submit a compliant objection may be excused upon a showing of good cause. You may also appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney.

If the Court overrules your objection and you did not submit a timely and valid Election Not to Participate in the Settlement, you will be bound by the terms of the Settlement and receive a Settlement Share.

**Class Member Settlement Information Sheet:**  The enclosed Class Member Settlement Information Sheet provides the information on which your Settlement Share will be calculated and an estimate of your Settlement Share if all Class Members are participating and all payment amounts are awarded; your actual Settlement Share may be more or less.  If the information in the Class Member Settlement Information Sheet (including your mailing address) is correct, you need not return the form.  If the information contained in the Class Member Settlement Information Sheet is not correct, correct the information on the sheet and return it to the Settlement Administrator.  If you believe information is incorrect, state on the Class Member Settlement Information sheet what you contend is the incorrect information and (other than with respect to your name, your address, and the last four digits of your Social Security number) include any documentation you have to support that contention.  The Class Member Settlement Information Sheet must be completed, signed by you, and returned to the Settlement Administrator postmarked by not later than [45 days after SA mails packet].  It is your obligation to keep the Settlement Administrator informed of any changes in your mailing address until your Settlement Share is received, should final approval of the Settlement be granted.  Failing to provide the Settlement Administrator with any change of your mailing address may prevent you from receiving your Settlement Share.

**Excluding Yourself from the Settlement:**  If you do not wish to participate in the Settlement, you must complete the enclosed form of Election Not to Participate in Settlement ("Election Not to Participate").  The Election Not to Participate must be completed, dated, signed by you, and returned to the Settlement Administrator by not later than [45 days after SA mails packet].  A Class Member who fails to mail an Election Not to Participate in the manner and by the deadline specified above will be bound by all terms and conditions of the Settlement, and will receive a Settlement Share, if the Settlement is approved by the Court, and the Judgment, regardless of whether he or she has objected to the Settlement.

Any person who files a complete and timely Election Not to Participate will, upon receipt, no longer be a member of the Settlement Class and will not be eligible to receive a Settlement Share, and he or she will not be included in calculating the Settlement Share of any other Class Member.  Any such person will retain the right, if any, to pursue at his or her own expense a claim against TPMG.  An incomplete or unsigned Election Not to Participate will be deemed invalid.

Consistent with AxisPoint policies, there will be no retaliation or adverse action taken against any Class Member who participates in the Settlement or elects not to participate in the Settlement.

**Settlement Administrator's Address:**  If applicable, send your corrected Class Member Settlement Information Sheet or your Election Not to Participate in Settlement to the Settlement Administrator at the following address:

AxisPoint Settlement Administrator
Simpluris, Inc.
P.O. Box 26170
Santa Ana, CA 92799

**Class Counsel:**  Class Counsel may be reached as follows:

Kevin J. Stoops
Jason J. Thompson
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan  48076
Telephone: (248) 355-0300
Facsimile: (248) 436-8453
kstoops@sommerspc.com
jthompson@sommerspc.com

## FINAL SETTLEMENT APPROVAL HEARING

The Court will hold a final approval hearing on [date], at 10:00 a.m., in Courtroom A602 of the U.S. District Court for the District of Colorado, 901 19th Street, Denver, Colorado 80294, to determine whether the Settlement should be finally approved as fair, reasonable, and adequate. The Court will also be asked to approve the requests for the Class Representative Payments and the Class Counsel Fees and Expenses Payment.

The hearing may be postponed without further notice to the Class. **It is not necessary for you to appear at this hearing. If you have submitted an objection and indicated that you intend to appear in the manner set forth above, you may appear at the hearing and be heard.**

## GETTING MORE INFORMATION

The above is a summary of the basic terms of the Settlement. For the precise terms and conditions of the Settlement, you are referred to the detailed Settlement Agreement, which will be on file with the Clerk of the Court and available online at the following website: _____. The pleadings and other records in this litigation, including the Settlement Agreement, may be examined at the Office of the Clerk, U.S. District Court, 901 19th Street, Denver, Colorado 80294, during the Clerk's normal business hours; on the electronic docket for this case through the Public Access to Court Electronic Records ("PACER") system, http://www.cod.uscourts.gov/cm-ecf. You also may contact Class Counsel or the Settlement Administrator for additional information.

**PLEASE DO NOT TELEPHONE THE COURT OR AXISPOINT'S COUNSEL FOR INFORMATION REGARDING THIS SETTLEMENT OR THE CLAIM PROCESS! YOU MAY, HOWEVER, CALL ANY OF THE CLASS COUNSEL LISTED ABOVE.**

**DATED:** ____.
By Order of the Court

**<u>EXHIBIT B</u>**

**[CLASS MEMBER SETTLEMENT INFORMATION SHEET]**

*SHAULIS et al. v. FALCON SUBSIDIARY LLC d/b/a AXISPOINT HEALTH*
**U.S. District Court for the District of Colorado**
**No. 1:18-cv-00293-CMA**

**CLASS ACTION SETTLEMENT**
**CLASS MEMBER INFORMATION SHEET**

**IF YOU WANT TO RECEIVE A SHARE OF THE SETTLEMENT OF THE**
*Shaulis et al v. Falcon Subsidiary LLC d/b/a AxisPoint Health* **CLASS ACTION,**
**REVIEW THE INFORMATION BELOW TO CONFIRM THAT YOUR**
**CONTACT AND PERSONAL INFORMATION IS CORRECT.**

**IF THIS INFORMATION IS ACCURATE, DO NOT RETURN THIS SHEET:**
**YOU AUTOMATICALLY WILL RECEIVE YOUR SETTLEMENT SHARE**
**UNLESS YOU SUBMIT AN ELECTION NOT TO PARTICIPATE.**

**IF THE INFORMATION BELOW IS NOT CORRECT, PROVIDE**
**CORRECTED INFORMATION, DATE AND SIGN THIS FORM (AT THE**
**BOTTOM OF THE PAGE), AND MAIL IT, POSTMARKED NOT LATER**
**THAN [45 DAYS AFTER SA MAILS PACKET], TO:**

AxisPoint Settlement Administrator
Simpluris, Inc.
P.O. Box 26170
Santa Ana, CA 92799

**PERSONNEL INFORMATION FOR**
**CLASS MEMBER RECEIVING THIS NOTICE**

1.  Your name:

    _____

2.  Your mailing address:

    _____

    _____

3.  Last four digits of your Social Security
    number:                                    XXX-XX-_____

4.  Your most recent hourly base rate of pay as
    an hourly Telehealth Nurse for AxisPoint
    from February 6, 2014 (California
    employees) or February 6, 2015 (non-
    California employees), to _____, 2018::    $_____/hour

5.  Total number of hours you worked as a
    Telehealth Nurse from February 6, 2014
    (California employees) or February 6, 2015
    (non-California employees), to ,
    2018:

    work hours

6.  Total number of weeks you worked at least
    forty (40) hours as a Telehealth Nurse from
    February 6, 2014 (California employees) or
    February 6, 2015 (non-California
    employees), to              , 2018:

    days

7.  Your estimated Settlement Share:

    $

**IF ANY OF THE INFORMATION SHOWN ABOVE (NUMBERS 1 TO 7) IS NOT
CORRECT, PLEASE SO INDICATE BELOW.  IF YOU ARE DISPUTING ANY
INFORMATION IN NUMBERS 4 TO 7 SHOWN ABOVE, STATE WHAT YOU
BELIEVE TO BE THE CORRECT INFORMATION AND ATTACH ANY
DOCUMENTATION THAT SUPPORTS YOUR CONTENTION.**

| **Corrected Information** |
|---|

| | |
|---|---|
| 1.  Your *corrected* name: | _____ |
| 2.  Your *corrected* mailing address (include telephone number, starting with area code): | _____<br>_____<br>_____ |
| 3.  *Corrected* last four digits of your Social Security number (you are *not* required to provide your entire Social Security number): | XXX-XX-_____ |
| 4.  *Corrected* most recent hourly base rate of pay (including applicable shift differential) as a Telehealth Nurse for AxisPoint from February 6, 2014 (California employees) or February 6, 2015 (non-California employees), to           , 2018: | |

| Corrected Information | |
|---|---|
| 5. *Corrected* number of hours you worked as a Telehealth Nurse for AxisPoint from February 6, 2014 (California employees) or February 6, 2015 (non-California employees), to ▮▮▮▮, 2018: | _____ |
| 6. *Corrected* number of weeks you worked at least forty (40) hours as a Telehealth Nurse for AxisPoint from February 6, 2014 (California employees) or February 6, 2015 (non-California employees), to ▮▮▮▮, 2018: | _____ |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: _____ ____, 2018.

_____
(Signature)

**PLEASE REMEMBER:  IT IS YOUR OBLIGATION TO
INFORM THE SETTLEMENT ADMINISTRATOR OF
ANY CHANGE TO YOUR MAILING ADDRESS PRIOR TO YOUR
RECEIPT OF YOUR SETTLEMENT SHARE.  FAILURE TO UPDATE
YOUR MAILING ADDRESS MAY PREVENT YOUR RECEIPT OF
YOUR SETTLEMENT SHARE.**

**<u>EXHIBIT C</u>**

**[ELECTION NOT TO PARTICIPATE IN SETTLEMENT]**

**SHAULIS et al. v. FALCON SUBSIDIARY LLC d/b/a AXISPOINT HEALTH**
**U.S. District Court for the District of Colorado**
**No. 1:18-cv-00293-CMA**

**ELECTION NOT TO PARTICIPATE IN SETTLEMENT**

**IF YOU WANT TO BE INCLUDED IN THIS CLASS ACTION
SETTLEMENT, DO NOT FILL OUT THIS FORM.**

**IF YOU DO NOT WANT TO BE INCLUDED IN THE
SETTLEMENT, YOU MUST DATE AND SIGN THIS DOCUMENT AND
MAIL IT BACK TO THE ADDRESS BELOW, POSTMARKED NOT
LATER THAN [45 DAYS AFTER DATE SA MAILS PACKET]:**

AxisPoint Settlement Administrator
Simpluris, Inc.
P.O. Box 26170
Santa Ana, CA 92799

---

I have received notice of the proposed settlement in this action and I wish to be excluded from the class and ***not*** to participate in the proposed settlement.  I understand this means that I will not be bound by the settlement and will not share in the settlement proceeds, but I will retain the right, if any, to pursue a claim against Falcon Subsidiary LLC d/b/a AxisPoint Health with respect to the matters raised in the action referenced above.

Typed or Printed Name: _____

Address: _____

City, State, Zip Code: _____

Telephone Number, Including Area Code: _____

Last four digits of Social Security number:    XXX-XX-_____

Dated: _____, ____.

_____
(*signature*)